Bichakdson, J.,
delivered the opinion of the court:
This action is brought upon a report of the Commissary-General of'the Army, under date of December 4, 1875, to the Third Auditor of the Treasury, recommending the payment of the sum of $6,520 to the claimant for cattle and sheep taken during ■the year 1863, in Greenbrier County, West Yirginia, for Army use, by officers of the Second and Sixth West Yirginia Cavalry. On the 10th of December, 1875, the Auditor recommended the payment of the claim as reported by the Commissary-General, and on the 28th of December, 1875, the Second Comptroller concurred in the recommendation.
The original claim upon which this report was thus made was one of those first referred to the Commissary-General by the Act July 4, 1864 (13 Stat. L., 381), ch. 240, § 3. That act made it the duty of the Commissary-General of Subsistence to cause each claim to be examined, and if convinced that it was just, and of the loyalty of the claimant, and that the stores *458 bad been actually received or taken for tbe use of and used by said Army, then to report each case for payment to tbe Third Auditor of tbe Treasury, with a recommendation for settlement.
Upon the authority of Kaufman’s Case (11 C. Cls. 11., 659, affirmed on appeal, 96 U. S., 567), Woolner’s Case (13 C. Cls. R., 355), and tbe case of tbe First National Bank of Greencastle (ante, p. 225), tbe court might have bad jurisdiction of an action upon such a report or allowance (if it could be held to be an award), but for tbe first section of the act of 1864 before cited, which is as follows:
“ Tbe jurisdiction of tbe Court of Claims shall not extend to or include any claim against tbe United States growing out of tbe destruction or appropriation of, or damage to, property by tbe Army or Navy, or any part of tbe Army or Navy, engaged in tbe suppression of tbe rebellion from tbe commencement to tbe close thereof.”
This section was omitted from tbe Bevised Statutes, but was not repealed. By the Act February 18, 1875 (18 Stat. L., 318), ch. 80, it was added as a proviso to section 1059 of tbe Bevised Statutes, and is there printed in tbe second edition.
Tbe present action, although founded upon tbe report of tbe Commissary-General, is in fact brought to enforce a claim growing out of the appropriation of property by tbe Army engaged in tbe suppression of tbe rebellion, and so comes within tbe terms of tbe act restricting tbe jurisdiction of this court. (Lindsley’s Case, 4 C. Cls. R., 359; Patterson’s Case, 6 ib., 40.)
In Filor’s Case (9 Wall., 45, and 7 C. Cls. R., 119), Mr. Justice Field, in delivering tbe opinion of tbe Supreme Court, said:
“The manner of tbe appropriation, whether made by force or upon consent of tbe owner, does not affect tbe question of jurisdiction. Tbe consideration of any claim, whatever its character, growing out of such appropriation is excluded. Tbe term “appropriation ” is of the broadest imj>ort; it includes all taking and use of property by the Army or Navy, in tbe course of tbe war, not authorized by contract with tbe government. Tbe use may be permanent or temporary, and it may result in tbe destruction of or tbe mere injury to tbe property. If tbe right to tbe property, or to its use, is not obtained by valid contract with the government, the taking or use of it is an appropriation of it within tbe meaning of tbe act of Congress.”
There is another objection to the enforcement of tbe present claim in this court. In order to maintain tbe action, it is neces *459 sary for the claimant to show a contract, express or implied, or a statute liability on the part of the defendants.
He relies upon the report of the Commissary-General. But that officer had no authority to make the United States liable, unless it was given by the act of 1864. That act required him to report every claim of which he was convinced of the justice, and of the loyalty of the owner, to the Third Auditor for payment, with a recommendation for settlement. It is not clear that this provision constituted an implied contract with claimants to pay them whatever sums the Commissary-General should report, and thus created a liability on the part of the United States for the amount reported. But if it did, the implication was removed by the Act June 14, 1874 (18 Stat. L., 75, ch. 285, § 2), which, after directing that the balances of appropriations made for the payment of such claims should be covered into the Treasury, makes this provision:
“ The Quartermaster-General, Commissary-General, and Third Auditor of the Treasury shall continue to receive, examine, and consider the justice and validity of such claims as shall be brought before them under the act of July fourth, eighteen hundred and sixty-four, and the acts amendatory thereof; and the Secretary of the Treasury shall make report of each claim allowed by them, at the commencement of each session of Congress, to the Speaker of the House of Representatives, who shall lay the same before Congress for consideration.”
This provision indicates with clearness that Congress intended to constitute the public officers there referred to, not as arbitrators or quasi-judicial officers to decide upon the liability of the gw eminent, but as accounting officers to make report upon the claims submitted to them under the former act; and that the final determination as to whether or not the United States should pay any of the claims should be reserved to Congress alone.
That provision was in force when the present claim was acted upon by the Commissary-General-, unless it was superseded or modified by the Act February 18, 1875 (18 Stat. L., 317, ch. 80), the purpose of which is declared to be that “ of correcting errors and supplying omissions in an act to revise and consolidate the statutes of the United States in force on the thirty-first day of December, anno Domini one thousand eight hundred and seventy-three, so as to make the same [the Revised Statutes] truly express such laws.” By this act sections 2 and 3 of the act of *460 1864, ch. 240, were added to chapter 4 of the revision as sections 300 A and 300 B.
In our opinion, this amendment was not in the nature of a new enactment, but is to be taken and construed as though the Révised Statutes had been originally adopted with the alterations thus made incorporated into them in their proper places, as has been done in the second edition ; and that they are all subject to the provisions of §§ 6595 and 5601. The former provides that u the foregoing seventy-three titles embrace the statutes of the United States, general and permanent in their nature, in force on the first day of December, one thousand eight hundred and seventy-three.” The latter is as follows :
. “ The enactment of the said revisi on is not to affect or repeal any act of Congress passed since the first day of December, one thousand eight hundred and seventy-three, and all acts passed since that date are to have full effect as if passed after the enactment of this revision, and so far as such acts vary from or conflict with any provision contained in said revision, they are to have effect as subsequent statutes and as repealing any portion of the revision inconsistent therewith.”
The Revised Statutes were enacted June 22,1874, expressing the laws as they existed December 1, 1873. Between those dates Congress had passed many acts inconsistent with the provisions contained in the revision, but by the section referred to they were all saved from repeal by the later statute. The act of June 16, 1874, ch. 285, requiring the Secretary óf the Treasury to report these claims to Congress, was one of the acts passed between those dates and is not modified by the Revised Statutes as amended, but remains in force.
There is some language in the Act April 30, 1878 (20 Stat. L., 524, ch. 77), which seems to indicate that it was supposed by the Forty-fifth Congress that the Court of Claims had, or might have in some form, jurisdiction of claims mentioned in the act of 1864, but we do not think it is sufficient to confer jurisdiction of cases expressly excluded from this court by other acts, and of claims which Congress has otherwise manifested the purpose of taking final jurisdiction of to themselves.
The judgment of the court is that the petition be dismissed.