## UNITED STATES *v.* AUFFMORDT and another.

(*District Court, S. D. New York.* March, 1884.)

1 PENALTIES AND FORFEITURES—MOIETY ACT OF JUNE 22, 1874—FRAUDS ON REVENUE.

The moiety act passed June 22, 1874, was designed to cover the whole ground of frauds on the revenue in the entry of imported goods at the custom-house, embracing the punishment of offenders criminally, as well as indemnity to the government; and it therefore supersedes, by implication, the different provisions of sections 2839 and 2864 of the Revised Statutes on the same subject.

2. SAME—REV. ST. §§ 2839, 2864.

The absolute forfeiture of goods fraudulently entered, which is prescribed by section 12 of the moiety act, is inconsistent with, and repugnant to, the forfeiture in the alternative only of either the goods or their value, as prescribed by sections 2839 and 2864. Under the former, the title of the goods vests in the United States from the moment when the fraud is committed, and prevails against *bona fide* purchasers before seizure; under the latter, the title of the government vests only from the time of its election to proceed against the goods, rather than for their value, and a *bona fide* sale in the mean time will pass a good title against the government. The absolute forfeiture under section 12 of the moiety act, and the alternative forfeiture under sections 2839 and 2864, for the same frauds, cannot co-exist; the alternative forfeiture of value under those sections is, therefore, within the repealing clause of the moiety act, which repeals all acts or parts of acts inconsistent therewith.

3. SAME—ACT OF FEBRUARY 18, 1875—CONSTRUCTION—REPEAL—PROCEEDING AGAINST GOODS.

The act of February 18, 1875, amending the Revised Statutes, was not designed as new legislation, but only to make the text of the Revised Statutes express truly the law as it existed on December 1, 1873. The amendment of section 2864 by that act is to be read and construed as though it were a part of the Revised Statutes, as originally enacted, and subject, therefore, to the provisions of sections 5596 and 5601. *Held, therefore,* that the amendment of section 2864, by the act of February 18, 1875, does not supersede the moiety act as subsequent legislation. *Held, accordingly,* that forfeitures of value for fraudulent undervaluations can no longer be enforced under sections 2839 and 2864; the remedy is confined to proceedings against the goods under section 12 of the moiety act.

4. SAME—SUIT IN PERSONAM.

Whether the language of section 2864, prescribing forfeiture of "value" without saying, like section 2839, of whom to be recovered, is sufficient to authorize a suit *in personam, quære.*

The above suit was brought *in personam* to recover $321,519.29, the value of a large quantity of silk ribbons imported from Switzerland into the port of New York, during the years 1879, 1880, 1881, and 1882, and entered in the custom-house by the defendants, as it is alleged, by means of fraudulent undervaluations in the invoices as to the market value of the goods. The importations and entries are 91 in number. The declaration alleges that the value of such goods, by reason of such fraudulent undervaluations, became forfeited to the United States under sections 2864 and 2839, Rev. St. None of the goods were seized, nor were any proceedings ever taken to forfeit the goods.

By the plaintiff's bill of particulars the record shows that the goods were sent by the manufacturers in Switzerland to the defendants here for sale on commission, none of them being purchased goods. The

cause came on for trial on the thirteenth of February, 1884, before the district judge and a jury; and after the opening by the plaintiff's counsel, stating in substance the above matters, the defendant's counsel moved, upon the record and the facts stated in the opening, that a verdict be directed for the defendant, on the ground that forfeitures of value under section 2864 had been superseded by section 12 of the act of June 22, 1874, and that since that act the goods only, and not their value, could be forfeited. After elaborate argument, the court, on the next morning, granted the motion, upon the grounds stated in the following opinion:

Elihu Root and John Proctor Clarke, for the United States.

Tremain & Tyler and Charles M. Da Costa, for defendant.

BROWN, J. The claim of the plaintiff in this case is founded upon alleged fraudulent undervaluations of imported goods consigned to the defendants for sale by the manufacturers in Europe. Such frauds fall clearly within the provisions of section 12 of the act of June 22, 1874, which, for convenience sake, I shall call the moiety act. They also fall equally clearly within section 1 of the act of March 3, 1863, and section 2864, Rev. St., if the forfeitures of value provided by those sections are still in force. The latter prescribe a "forfeiture of the merchandise, or the value thereof;" and this suit is based upon that provision. The moiety act prescribes a forfeiture of the *goods* only.

The point raised by the motion does not appear to have been previously considered in any reported case. But few suits for the forfeiture of the *value* of goods, instituted since the passage of the moiety act, have been brought to trial within this district; and in none of them do I find that the attention of the court was called to the point now raised, namely, that the moiety act, by prescibing fine, imprisonment, and the absolute forfeiture of the goods, as the remedies of the government in cases of fraudulent undervaluation, omitting any forfeiture of value, has superseded and repealed section 1 of the act of March 3, 1863, (section 2864, Rev. St.,) which in similar cases prescribed only an alternative forfeiture of the goods *or* the value thereof.

Section 2839 provides for the forfeiture of merchandise or the value thereof, "to be recovered of the person making entry," where the goods are "not invoiced according to the actual cost thereof at the place of exportation, with the design to evade payment of duty." This section, taken from section 66 of the act of March 27, 1799, (1 St. at Large, 677,) is applicable only to goods purchased. *Alfonso v. U. S.* 2 Story, 421, 429, 432. Where goods are imported into this country by the manufacturer, the invoice is required to state, not the actual cost at the place of exportation, but the "true market value thereof." Sections 2841, 2845, 2854.

The only statute under which a forfeiture of value can be claimed in cases like the present, that is, of goods obtained otherwise than

by purchase, is section 2864, taken from section 1 of the act of March 3, 1863, (12 St. at Large, 763.) That section reads as follows:

"If any owner, consignee, or agent of any merchandise shall knowingly make, or attempt to make, an entry thereof by means of any false invoice, or false certificate of a consul, vice consul, or commercial agent, or of any invoice which does not contain a true statement of all the particulars hereinbefore required, or by means of any other false or fraudulent document or paper, or of any other false or fraudulent practice or appliance whatsoever, such merchandise, or the value thereof, shall be forfeited."

As an original question, it might well be doubted whether the mere words of section 2864 and of section 1 of the act of 1863, declaring a forfeiture of the goods or the value thereof, would be sufficient to sustain a suit *in personam* against the importer for such value without any seizure of the goods. I do not know of any analogy supporting such penal actions *in personam* upon such loose statutory words. The section does not specify who is to be sued in person, or against whom any recovery is to be sought; whether against the owner of the goods, his agent, or against the person making the entry. Suppose the owner guilty of fraud, but the agent making the entry innocent, is the latter, after having sold the goods and turned over the proceeds to his principal, to be held liable to pay the value over again to the United States, without any more explicit language making him liable than simply that the value shall be forfeited, without saying from whom to be recovered?

The act of 1799, (section 2839,) after declaring a forfeiture of value, adds "to be recovered of the person making entry." By the omission of these, and any equivalent words, in the act of 1863, it might well be considered that the intention of the latter act was only to provide for the forfeiture of the value of the goods in those cases where the goods had been seized and allowed to be bonded under other provisions of law, a power concerning which some question has been repeatedly made. Though many suits for value have been brought since the act of 1863, I am not aware that the attention of the court has been called to this objection in any previous action. Omitting, therefore, any further reference to this question, I proceed to the main ground of the motion, assuming that section 2864, like section 2839, authorizes a suit for value, independent of any seizure of the goods.

Section 12 of the moiety act, passed June 22, 1874, (1 Sup. Rev. St. 79,) is as follows:

"Any owner, importer, consignee, agent, or other person who shall, with intent to defraud the revenue, make, or attempt to make, any entry of imported merchandise, by means of any fraudulent or false invoice, affidavit, letter, or paper, or by means of any false statement, written or verbal, or who shall be guilty of any willful act or omission by means whereof the United States shall be deprived of the lawful duties, or any portion thereof, embraced or referred to in such invoice, affidavit, letter, paper, or statement, or affected by such act or omission, shall for each offense be fined in any

sum not exceeding five thousand dollars nor less than fifty dollars, or be imprisoned for any time not exceeding two years, or both; and, in addition to such fine, such merchandise shall be forfeited; which forfeiture shall only apply to the whole of the merchandise in the case or package containing the particular article or articles of merchandise to which such fraud or alleged fraud relates. And anything contained in any act which provides for the forfeiture or confiscation of an entire invoice in consequence of any item or items contained in the same being undervalued, be and the same is hereby repealed."

Section 13 provides that any merchandise entered by any person violating the preceding section, but not subject to forfeiture under the same section, may, "while owned by him, or while in his possession, to double the amount claimed, be taken by the collector and held as security for the payment of any fine incurred." Section 14 of the same act provides that the omission, without intent to defraud the revenue, or any of the various shipping charges, commissions, port duties, etc., which may be required by law, shall not be a cause of forfeiture of goods or their value; but requires that in such cases the collector shall add to such charges the further sum of 100 per cent., which addition shall constitute a part of the dutiable value. Section 16 permits no fine, penalty, or forfeiture in any case, existing or subsequent, unless the jury finds specially an actual intent to defraud. Section 22 provides that no suit to recover "any pecuniary penalty or forfeiture of property" under the revenue laws shall be instituted except within three years, etc. Section 26 repeals all acts and parts of acts inconsistent therewith. The section last cited does not in terms refer to sections 2839 and 2864, nor to the corresponding sections of the acts of 1799 and 1863, from which they were taken, but repeals whatever is inconsistent with it.

Although the moiety act was passed on the same day with the enactment of the Revision of the Statutes, the latter is only declaratory of the law as it existed on December 1, 1873, (section 5595;) and all acts of congress passed after the latter date are to be construed as subsequent enactments, and modify the Revised Statutes accordingly. Section 5601; *U. S.* v. *Bowen,* 100 U. S. 508, 513; *Brown* v. *Jefferson Co. Nat. Bank,* 9 FED. REP. 258–260; *In re Oregon, etc., Co.* 3 Sawy. 614, 617; *U. S.* v. *Bain,* 5 FED. REP. 192, 195. The single question, therefore, is, whether the forfeiture of the value of goods, by reason of fraudulent undervaluations on the entry thereof, has been repealed by the provisions of the moiety act. Such consideration as I have been able to give to the subject satisfies me that the forfeiture of value in such cases must be deemed superseded and repealed by that act,—*First,* because in the passage of the moiety act the whole subject of fraudulent importations, and the remedies and punishments to be enforced therefor, were evidently fully and deliberately considered; new and diffent fines, punishments, and remedies were thereby provided, which include both punishment of the offender and indemnity to the government; and these, by implication, supersede the former and dif-

ferent provisions on the same subject: *second,* because the absolute
forfeiture of the goods denounced by the moiety act is clearly repug-
nant to the alternative forfeiture only "of the goods *or* the value
thereof," as prescribed in the previous acts, so that both cannot pos-
sibly co-exist; and, *third,* upon the decisions of the supreme court in
analogous cases.

The rule of construction where a subsequent statute covers the same
ground as a former one has been frequently defined by the supreme
court. Thus, in the case of *Norris* v. *Crocker,* 13 How. 429, 438, Mr.
Justice CATRON, delivering the unanimous opinion of the court, said:

"As a general rule, it is not open to controversy that where a new statute
covers the whole subject-matter of an old one, adds offenses and prescribes dif-
ferent penalties for those enumerated in the old law, that then the former stat-
ute is repealed by implication, as the provisions of both cannot stand together."

Mr. Justice FIELD, in *U. S.* v. *Tynen,* 11 Wall. 88, said, (p. 92:)

"It is a familiar doctrine that repeals by implication are not favored. When
there are two acts on the same subject, the rule is to give effect to both, if
possible. But if the two are repugnant in any of their provisions, the latter
act, without any repealing clause, operates, to the extent of the repugnance,
as a repeal of the first; and even where two acts are not in express terms re-
pugnant, yet if the latter act covers the whole subject of the first, and embraces
new provisions, plainly showing that it was intended as a substitute for the
first act, it will operate as a repeal of that act."

The same rule was reaffirmed and applied in the case of *King* v.
*Cornell,* 106 U. S. 395, 396, S. C. 1 Sup. Ct. Rep. 312, in the case
of *Pana* v. *Bowler,* 107 U. S. 529, 538, S. C. 2 Sup. Ct. Rep. 704, and
in *Murdock* v. *City of Memphis,* 20 Wall. 590, 617. In the case last
cited, Mr. Justice MILLER, in delivering the opinion of the court, says,
(p. 617:)

"A careful comparison of these two sections can leave no doubt that it was
the intention of congress, by the latter statute, to revise the entire matter to
which they both had reference: to make such changes in the law as it stood
as they thought best; and to substitute their will in that regard entirely for the
old law upon the subject. We are of opinion that it was their intention to
make a new law, as far as the present law differed from the former; and that
the new law, embracing all that was intended to be preserved of the old, omit-
ting what was not so intended, became complete in itself, and repealed all
other law on the subject embraced within it."

The language quoted from these cases seems to me to be specially
applicable here. In scarcely any of the cases cited, where a later
statute was held to repeal a former one by implication, was the evi-
dence so clear, as it seems to me, both from the provisions of the stat-
ute itself and the history of its passage, that congress intended to deal
with the whole subject, and to declare what in the future should be
the whole law of remedy and punishment, as in the case of the moiety
act, in its dealing with the subject of fraudulent importations, and the
punishment and remedies of the government therefor.

The attention of congress had been called to the whole subject by
what had been deemed to be crying abuses in the administration of

the former law. There were widespread complaints that the machinery of the law then existing was skillfully worked by agents and informers of the government for their own benefit, to extort large sums of money from the merchants for trifling and uncertain irregularities or violations of law. The chief means by which these extortions were alleged to be practiced were by the institution of suits for vast sums of money, alleged to have become due to the government through forfeitures of the value of goods entered during a series of years preceding. In such suits, by a preliminary seizure of the books and papers of the merchant and the detention of them in custody, and by reason of technical forfeitures unaccompanied by fraud, and of the forfeiture of whole invoices for irregularities in a single item, merchants, deprived of their books and uncertain of the precise facts, were often constrained, through their uncertainty as to the result, and the injury to their credit by the long pendency of suits for such large demands against them, to pay great sums in settlement, far beyond the bounds of reasonable forfeiture or of legitimate punishment.

The moiety act, passed under these circumstances, shows, by its own provisions, that it was designed to correct the evils complained of, by means of changes broad and radical: (1) By abolishing the moiety system entirely; (2) by prescribing more definite rules under which the books and papers of merchants might be seized and examined; (3) by preventing the forfeiture of a whole invoice when only a part of the cases or packages included in it might be affected by fraud, (section 12;) (4) by abolishing (section 16) all fines and forfeitures, except where a jury should find an actual intent to defraud; (5) by enacting, in cases of actual fraud, new and heavy punishments, by fine and imprisonment, (section 12;) (6) by enacting, also, in cases of actual fraud, the absolute forfeiture of the goods to which the fraud relates, in place of the former alternative of a forfeiture of the goods or their value, and thus disallowing civil suits for value merely, which had furnished the chief means of the previous abuses; (7) by providing security (section 13) for the collection of fines where the goods were not seized; (8) by limiting suits to three years, (section 22.)

This act, moreover, is more precise and definite in its provisions than are the former acts, in defining the frauds to be punished; it embraces every conceivable act of commission or of omission, accompanied by fraud. There are new conditions and qualifications applying to every part of the former law. As a condition of forfeiture, in every act of commission, the moiety act requires an actual intent to defraud; and in every act of omission, it adds, as a further condition, that the United States be thereby "deprived of its lawful duties," (section 12,) a qualification not existing under section 2864. But why should congress add such a qualification to acts of omission, if for precisely the same acts of omission a forfeiture was still to be incurred under section 2864 without any such qualification? The

two are inconsistent in intention, and the latter act therefore supersedes the former. The case of *Daviess* v. *Fairbairn*, 3 How. 636, is exactly analogous, where a new qualification upon the power of a justice of the peace to take acknowledgments, was held to repeal by implication a former statute without such qualification.

Section 12, moreover, creates a new criminal offense for the same frauds, punishable by heavy fine and imprisonment; and while, in its remedial parts, providing for the indemnity of the government, it limits the remedy by forfeiture to the goods only, it makes this forfeiture absolute, so that even *bona fide* purchasers get no title as against the government; and if this remedy be lost by a dispersion of the goods before seizure, it still provides additional means for indemnifying the government, not merely by the heavy fines which it imposes on conviction for the same acts, but by authorizing a seizure by the collector of any other imported goods of the same merchant, as security for the payment of any such fines as may be recovered. Section 13. These fines themselves would, as a general rule, furnish complete indemnity to the government for fraudulent importations. In the present case they would exceed by nearly one-half the entire amount claimed in this action, if the facts alleged were proved on indictment. There is no inadequacy in the law, therefore, as a means of indemnity to the government, through the repeal of forfeitures of value by civil action. The limitation of forfeiture to the goods themselves tends to promote vigilance in discovering fraud before the dispersion of the goods, and the trial of the questions in dispute while the transactions are recent. To the honest merchant, the restriction of suits based upon old transactions to criminal proceedings, operates as some check against abuses, because criminal proceedings are less likely to be instituted lightly upon trifling irregularities or small differences on estimated values, about which the opinion of experts might differ; while if fraud be proved, the court, through the discretion provided by the moiety act, can adjust the fines and the imprisonment, so as to bear some reasonable relation to the loss of the government and to legitimate punishment. The moiety act, therefore, as it seems to me, falls clearly within the general doctrine of the cases above cited. It covers the whole field of former acts; it creates new offenses and new punishments for the same subject-matter; it adds new and important qualifications to the former law; and it provides fully, though in a different way, for the indemnity of the government and for the punishment of offenders.

Again, it is to be noted that under the provisions forbidding any fine, forfeiture, or penalty, except in case of actual intent to defraud, and the prohibition of the forfeiture of any packages except those to which the fraud relates, not a single previous statute can be enforced in the shape in which it stands. Section 2864 contains no clause even which can be thus enforced just as it exists in the statute. All that could possibly be done with it would be to pick out portions of

it, and apply to them the provisions of the moiety act as modifications, and enforce them as thus modified. But the moiety act does not seek or profess to modify these former acts when inconsistent with it. It enacts its own remedies for the same subject-matter, and declares by section 26 that all acts and parts of acts "inconsistent with" itself are not modified accordingly, but repealed.

The debates in congress show clearly an intention to enact, not cumulative remedies, but a new system in place of the old.

Mr. Roberts, in reporting the bill to the house, said:

"We have endeavored to provide for adequate punishment in all cases of guilty intent to defraud, and to furnish relief in case of accident or mistake. We have sought to provide for penalties proportionate to the offenses proved which the present laws utterly ignore." Cong. Rec. 43d Cong. 1st Sess. vol. 2, pt. 5, p. 4039.

Senator Stewart, (page 4809,) in reference to the twelfth section, says, in opposition:

"I do not think they could have seen how far this section goes to break up all laws on the subject; for remember this is to take the place of other statutes, as I understand."

At page 4813, Senator Edmunds says:

"This bill is apparently a substitute for the provisions about frauds on the revenue which the act of 1799 and of 1830 and of 1832 and of 1866 contained."

Senator Conkling, (pages 4815, 4816,) in answer to the inquiry of Senator Thurman as to how far the twelfth section would affect existing laws, said:

"When you describe an offense and provide a punishment and repeal of other statutes, the general rule certainly is that you occupy the ground with the new statute, and you annul that which before operated upon the same subject in a different way. The senator will see, if he will read the whole of this twelfth section, that not in one respect alone, but with great particularity, in all respects of general scope, it covers the ground of the section to which he has referred."

From the clear expressions of the framers of the law, therefore, as well as from the provisions of the law itself, the intent to supersede former acts appears evident; and the forfeiture of value would be deemed repealed by implication, even if there were no special repugnancy to it in the new law. See, also, *Pana* v. *Bowler, supra; Cook Co. Bank* v. *U. S.* 107 U. S. 445, 451; S. C. 2 Sup. Ct. Rep. 561; *Bartlet* v. *King*, 12 Mass. 537; *Nichols* v. *Squires*, 5 Pick. 168.

2. But there is also a clear repugnancy between the provisions of the moiety act and those of section 2864. Section 12 of the moiety act, in cases like the present, declares an absolute forfeiture of the goods. Section 1 of the act of March 3, 1863, (section 2864, Rev. St.,) declares the alternative forfeiture of the goods *or* their value. Under the earlier law the forfeiture was not absolute, but only at the election of the government; under the moiety act there can be no

election in the government, for the forfeiture of the goods is made absolute. Under the former, the government might have either the goods or their value, but not both; and before it could have either it must elect which it would pursue. The old law not only permitted, but enforced, an election by the government. The moiety act permits no election, since, as I have said, the forfeiture of the goods is made absolute. These two provisions of the statute, therefore, cannot co-exist. There cannot be an election to have either the goods or their value, and, at the same moment, an absolute statutory forfeiture of the goods themselves. The two provisions are mutually exclusive.

The distinction between the two acts in this respect is of very great practical importance. Where the law makes the forfeiture absolute, as the moiety act makes it, the title of the goods is vested in the government at once, from the moment when the unlawful acts are committed; so that a sale of the goods by the importer, before seizure, to *bona fide* purchasers even, will not oust the title of the government. *Caldwell* v. *U. S.* 8 How. 366; *Henderson's Spirits,* 14 Wall. 44; *U. S.* v. *76,125 Cigars,* 18 Fed. Rep. 147. But where the forfeiture is only in the alternative of "the goods or their value," a sale to a *bona fide* purchaser, before the government has exercised its right of election to resort to the goods, will pass a good title, and prevail against any subsequent seizure by the government. *Caldwell* v. *U. S.,* *supra*; *U. S.* v. *York St. Flax Spinning Co.* 17 Blatchf. 138; *U. S.* v. *Four Cases of Lastings,* 10 Ben. 371. Where, as in section 2864, the forfeiture is in the alternative, the government's right of election to pursue the goods or their value, so long as the goods have not passed into *bona fide* hands, remains absolute. Though the goods be at hand and capable of immediate seizure, the government is not bound to resort to them; but, at its option, may pass them by and sue the importers for their value. This is expressly stated by the chief justice in the case of *U. S.* v. *York St. Flax Spinning Co., supra,* where he says, (page 140:)

"Until the sale the government may seize the goods and realize their value by a sale; or it may pass by the goods and look directly to the wrong-doer for their value. The effect of a sale is to take away all right of proceeding against the goods, and leave the government to its original right of action against the fraudulent importer, for the value only."

But, under section 12 of the moiety act, no such election can possibly exist to pass by the goods and sue for their value. The act itself determines that election by decreeing the absolute forfeiture of the goods. The two sections are therefore clearly repugnant in this respect; and the earlier statute is, therefore, necessarily repealed *pro tanto,* and falls within the express language of the repealing clause. Section 26. No suit for value, therefore, can be maintained so long as section 12 of the moiety act is in force.

The repeal of the former forfeiture of value, through this repugnancy of section 12 of the moiety act, is so clear that no authorities

seem needed to sustain it.    I cite, however, a few instances somewhat analogous.

In the case of *U. S.* v. *Tynen, supra,* the court held that there was a clear repugnance between the acts of 1813 and 1870 there referred to, because "the first act makes the punishment of the offense designated imprisonment or fine; it provides that the punishment shall be one or the other, and in so doing declares that it shall not be both. The second act allows both punishments, in the discretion of the court; it thus permits what the first law prohibits."    There were similar differences also as respects the term of imprisonment, and the amount of fine; and the court adds:

"When repugnant provisions like these exist between two acts, the latter is held, according to all the authorities, to operate as a repeal of the first act, for the latter act expresses the will of the government as to the manner in which the offenses shall be subsequently treated."

So in *Com.* v. *Kimball,* 21 Pick. 373, the court (Shaw, C. J.) held that a former statute imposing a penalty of $20 for each offense was essentially and substantially inconsistent with a later statute which provided a penalty of not more than $20 nor less than $10 for the same offense; because the former was absolute and imperative, and the latter allowed a discretion.

In *Norris* v. *Crocker,* 13 How. 439, the prior statute of 1793, giving a penalty of $500, to be recovered by the claimants by civil action for harboring fugitive slaves, was held plainly repugnant to the act of 1850, which for the same offense imposed a fine not exceeding $1,000, and imprisonment not exceeding six months, on conviction by indictment.

On this ground alone, therefore, I should feel compelled to hold that the forefeiture of value provided by the act of 1863, and under section 2864, was repealed.

3. The recent decision of the supreme court, in the case of *U. S.* v. *Claflin,* 97 U. S. 546, affords so strong an analogy to the present, though without the absolute repugnancy last mentioned, as to be controlling in this case.    That action was brought under the act of 1823, which declared that persons knowingly receiving smuggled goods should "forfeit and pay double their value."    The act of July, 1866, for the same offense, imposed, like the moiety act, a forfeiture of the goods, and a fine, on conviction, not exceeding $5,000, nor less than $50, together with imprisonment, not exceeding two years, in the discretion of the court; but omitting any forfeiture of value.    It did not repeal in express terms the act of 1823; but it did repeal "all other acts or parts of acts conflicting with or supplied by it."    The court held that the later act would be deemed a repeal of the former by implication, even had it contained no repealing clause; that where the objects of two statutes are the same, whether by way of punishment for the offense or of indemnity for the loss, and the later act covers the same ground as the former, in that case the later statute must be

deemed not cumulative, but as a substitute for the earlier one. The decision in that case is the more noteworthy and emphatic, since it modified the view of the same statutes previously expressed in the case of *Stockwell* v. *U. S.* 13 Wall. 531, where the former statute was regarded as wholly remedial, and the latter as wholly punitive; and both were consequently held to be in force. In the *Case of Claflin,* the court say, (97 U. S. 552, 553 :)

"If this were truly the purpose of those acts their objects would not have been the same, and therefore the second statute could not be regarded as repealing the former. But a renewed and more careful examination of the two statutes has convinced us that congress, in the act of 1866, had in view not only punishment of the offense described, but indemnity to the government for loss sustained in consequence of the criminal conduct of those guilty of the offense. The later act denounces a forfeiture of the goods concealed, etc., no matter in whose hands they may be found. If the forfeiture of double the value of the goods denounced by the act of 1823 was designed to secure indemnity to the government for the wrong done, the *forfeiture of the goods themselves,* declared in the act of 1866, must have been intended for the same purpose, and the fine and imprisonment were superadded as a vindication of public justice. If this is so, as we now think it is, the act of 1866 supplied the provisions of the second section of the act of 1823, and consequently would have repealed them had it contained no repealing clause."

In the *Claflin Case,* it will be observed, there was no absolute repugnancy between the act of 1823 and that of 1866; the former forfeited double the value; the latter forfeited the goods themselves. A single statute, however, might have imposed both of those forfeitures, and the government would then have derived thrice the value of the goods— a measure of damages not unfamiliar in revenue legislation. That case, therefore, was not one of absolute repugnancy, but of substitution by implication. The later act, besides providing criminal punishments, also defined the indemnity of the government; and this, the supreme court held, must be deemed to be a substitute for the indemnity provided by the preceding act.

In the present case, in lieu of the alternative forfeiture of the goods or their value, under the act of 1863 and section 2864, the moiety act, for the indemnity of the government, denounces the absolute forfeiture of the goods, just as the act of 1866 did in the *Claflin Case;* and like that act, also, it superadds the same fine and imprisonment. In the *Claflin Case,* the later act provided a forfeiture of the goods, where the former act provided a forfeiture of double their value. In the present case the moiety act provides absolute forfeiture of the goods, where, for the same offense, the earlier act provides an alternative forfeiture of the goods or their value. The present case is as clearly one of substitution as that of *Claflin.* The principles upon which the *Case of Claflin* was decided apply, therefore, in full force to the present case; and, in addition, we have here a clear repugnancy between the later and the former acts, such as did not there exist.

4. A few other sections of the moiety act furnish some considerations bearing on the subject under discussion; but none of them, as

it seems to me, are very important or decisive. The only section in which any reference is made to forfeiture of value is section 14. That section .provides that no omission to state in the entries any of the various small matters there referred to, "without intent to defraud the revenue," shall be a cause of forfeiture of goods or their value; but it requires the collector in such cases to add double the amount omitted. This, it may be said, is an implied recognition of the existence of some statute providing for the forfeiture of value on account of such omissions, and the continuance of such statutes in force, where there is intent to defraud. This section, however, applies to a very small and limited class of errors or omissions having nothing to do with the present case. There were pending suits to which the first part of this section was intended to apply, and that alone would be a sufficient reason for the reference to forfeitures of values. The inference sought to be drawn from it is of a negative character, and, as respects any subject clearly embraced in section 12, has no force as against the express provision of the latter section. The first part of section 14 is in reality surplusage, except as introduction to the last clause; since under section 16 no such forfeiture, either of goods or their value, in existing or subsequent suits, could be had without an actual intent to defraud. The essential part of the section is the latter half of it, which authorizes the collector to impose double the omitted amounts in cases free from fraud.

Section 22 assigns a limitation of three years for the recovery of any pecuniary penalty or forfeiture of property. This section could only apply to future suits. If forfeitures of value were supposed to be continued thereafter, no reason appears why suits for value should not have been included within the period of limitation, and the language have been made to read, "forfeiture of property or the value thereof." So, also, in the last paragraph of section 12, we find no recognition of any future forfeiture of value, such as would have been expected if such forfeiture was intended to remain as part of the existing law. This paragraph declares that "anything contained in any act which provides for the forfeiture or confiscation of the entire invoice in consequence of any item or items contained in the same being undervalued, be and the same is hereby repealed." The paragraph seems to have been inserted shortly before the passage of the bill, by amendment, out of abundant caution; and the same caution which dictated that would naturally have provided, not merely against a forfeiture or confiscation of all the goods invoiced, but also against forfeiture of the value thereof, if forfeitures of value had been supposed to be retained. On the whole, the other provisions of the moiety act seem to me to accord, rather than to disagree, with the construction I have given to section 12.

5. In what has been said, the subject has been considered as though sections 2864 had contained, when enacted on the twenty-second of June, 1874, a forfeiture of the goods or the value thereof,

like section 1 of the act of March 3, 1863, from which section 2864 was taken. In fact, however, in the Revised Statutes, as originally enacted, section 2864 did not contain the words "or the value thereof," but provided for the simple forfeiture of the goods. By the act of February 18, 1875, entitled "An act to correct errors and to supply omissions in the Revised Statutes of the United States," this omission in section 2864 was corrected by restoring the words "or the value thereof," as they stood in section 1 of the act of March 3, 1863, and as section 2864 now stands in the second edition of the Revised Statutes.

On behalf of the government it is claimed that this act of 1875 has re-enacted forfeitures of value in the cases provided by section 2864, because it is an act later than the moiety act, and directs that section 2864 be amended by inserting the words "or the value thereof." If the act of 1875 had been designed as new legislation intended to change the law existing at the time of its passage, in spite of any statutes passed after December 1, 1873, it would undoubtedly have the effect claimed for it. A slight consideration, however, of the circumstances and of the enacting clause of the act itself, are sufficient to show that such was not the intent of the act of 1875, and that no such effect can be given to it. The sole purpose of that act was evidently to correct textual errors and omissions in the work of revising the statutes, and to make the printed volume called the Revised Statutes state truly and correctly what it was intended to state, namely, the statutory law as it existed on the first of December, 1873. That such only was the purpose of the act of 1875, is stated, as it seems to me, as clearly and emphatically as words can express, in the enacting clause of the act itself, which is as follows: "Be it enacted, etc., that for the purpose of correcting errors and supplying omissions in the act entitled 'An act to revise and consolidate the statutes of the United States in force on the first day of December, 1873,' so as to make the same *truly* express *such laws,* the following amendments are hereby made therein:" Then follow 67 amendments. The thirty-third is the one here in question, amending section 2864 by inserting after the word "merchandise" the words "or value thereof." The enacting clause above quoted declares that this amendment to section 2864 "is hereby made" so as to make the same (section 2864) "truly express such law;" that is, the law on that subject in force on December 1, 1873. Necessarily, therefore, this amendment must be read, not as new legislation, or as a new law enacted on February 18, 1875, to take effect from that time, and to change intermediate legislation, but simply as a correction of the text of the Revised Statutes, so as to make section 2864 express what it was intended to express, namely, that by the law as it existed on the first day of December, 1873, for the causes there mentioned, the merchandise or its value should be forfeited.

In so far as the former law, by an unintentional omission, was unwittingly repealed by force of section 5596, the object of the act of 1875 was to restore the law as expressed in the Revised Statutes to what it actually was on December 1, 1873, and to what the revisors and congress intended to express in them. If there were no independent statutes in the mean time modifying the law as it existed on December 1, 1873, the effect of the act of 1875 was, indirectly, also to restore the law on and after February 18, 1875, to what it was on December 1, 1873, by doing away with the effect of the repealing clause of the Revised Statutes on that particular subject, (section 5596.) That, however, was the indirect result, not the direct object, of the law of 1875. The object was to make the Revised Statutes what they professed and were intended to be—a true statement of the law existing on December 1, 1873; and where there were other subsequent statutes designed to change the law existing on that date, the act of 1875 plainly had no reference to them, and no design to abrogate those changes. Such subsequent acts modify the Revised Statutes as amended by the act of 1875, because the amendments of 1875 were designed as corrections of, and as a part of, the Revised Statutes themselves, and not as new legislation on the topics to which they relate. The amendment must be treated, for all purposes, precisely as if it had been a part of section 2864 as originally enacted; and section 2864 is therefore subject, in its amended form, to the provisions of section 5601, declaring that all acts passed after December 1, 1873, in conflict with any provision contained in the Revised Statutes, shall have effect as subsequent statutes, and as repealing any portion of the Revision inconsistent therewith, and hence subject to the modifications of the moiety act as a subsequent statute. This intention, so plainly indicated by the enacting clause, is still further indicated from the last section of the act of 1875, namely, that the secretary of state is "directed, if practicable, to cause this to be printed and bound in the volume of the Revised Statutes of the United States."

This precise question, as to the construction of the act of February 18, 1875, arose in the court of claims, in *Ludington* v. *U. S.* 15 Court Cl. 453. In the opinion of the court, RICHARDSON, J., says:

"In our opinion this amendment (*i. e.*, under the act of 1875) was not in the nature of a new enactment; it is to be taken and construed as though the Revised Statutes had been originally adopted, with the alterations thus made incorporated into them in their proper place, as has been done in the second edition; and that they are all subject to the provisions of sections 5595 and 5601."

No case has been referred to intimating any different construction, and it seems to me entirely clear from the language of the act itself. See, also, *Wright's Case*, 15 Court Cl. 80.

A somewhat similar question arose in the case of *Reg.* v. *Overseers of St. Giles*, 3 El. & El. 223, in which the court of queen's bench held

that the act of 11 & 12 Vict. *c.* 111, correcting certain errors in the provisions of the act of 9 & 10 Vict. *c.* 66, must be considered and read as forming parts of the original act.

Prior to the enactment of the Revised Statutes there was no existing law which gave any color to the supposition that the alternative forfeiture of the goods or the value thereof, as provided by section 1 of the act of March 3, 1863, had been repealed. The omission, by the revisors, of the words "or the value thereof," in section 2864, was plainly an error. This appears conclusively on consulting their original report, title 36, entitled "collection of duties upon imports," in which section 2864 is embraced. That report is prefaced by the following note:

"N. B. In this pamphlet, words in the section printed in *italics* are new; those in brackets [thus] are found in the existing law, but are recommended to be omitted."

Section 2864, as contained in that report, has no words either in *italics* or in *brackets.* As it was not the duty of the revisors to change the law, but to consolidate it, and as they were authorized to omit only redundant or obsolete enactments, and to make such alterations as might be necessary to reconcile the contradictions, supply the omissions, and amend the imperfections of the original text, (14 St. at Large, p. 74, § 2,) it is clear that the omission of the words "or the value thereof" in their report of section 2864, without reference to this omission, either in italics or in brackets, these words being a material part of the existing law, must have been accidental.

The debates in congress show most clearly that the intention of the act of 1875 was to correct errors, and not to enact new legislation to speak from that date. Mr. Poland, in introducing into the house the act of February, 1875, said that the object was simply to correct the errors of the revisors and to make it certain that the law is not changed. Mr. Hoar said:

"We did our very best that our Revision of the law should not change the existing law in any particular. It has been discovered that by misprints, by an occasional omission of a word, by perhaps some misapprehension by the revisors as to the effect of a phrase, the law, in our judgment has been changed in some particulars by the Revision. We have now introduced a bill simply to restore the law to what it was; and I think members of the house should not, because they think particular legislation desirable, endeavor to hold on to what was accidentally done, without its being understood by the house or the committee. I submit that we should pass this bill just as it is, and if a change of the law upon any point be desired, let it be done by affirmative legislation."

In the senate, Senator Conkling, in a striking passage too long to be quoted in full, said:

"Certain words which stood in the law, which are part of the law, which are operative words, which the commissioners originally, and all who followed them, including the two houses of congress, were directed to preserve and reproduce unimpaired, certain such words, it turns out, were dropped," (from the Revision.) "Now, what is the function of this bill? Simply to

put them back—simply to correct this deviation from the statutes. There-fore, it is a great deal more then the senator from California says. It is more than the case where in a single instance, by a simple act of legislation, the two houses of congress inadvertently fall into an error. It is a case where a whole course of legislation required one single thing, to-wit, a truth-ful and absolute reflex of the whole body of law as it stood; and in attempt-ing to do that, all concerned, including the two houses of Congress, fell into an error. Now we come with this bill, the purpose of which is to correct that error; and what does the honorable senator from Connecticut propose? To hold up for examination the merits of the original provision; *and when we are attempting to verify and correct a purely ministerial proceeding of codifying the laws*, the senator wishes to go into the broad question of the merits of those laws which we proceeded to codify. * * * We are now simply engaged in making a truthful completion of that work in which com-missioners, committees, and congress have been engaged, which has no more to do with the merits or the defects of the laws as they exist than the paint-ing of the portrait truthfully has to do with the beauty or the deformity, the hue or the age, of the original from which it is painted. If this codification is true and honest, it is a reproduction of the laws as they stand, and not a production of the laws as the senator from Connecticut thinks they ought to stand, and as he is abundantly able to make them stand, when we are con-sidering a bill appropriate for that purpose."

It is very clear, therefore, that nothing was further from the inten-tion of congress in passing the act of February, 1875, than to enact new legislation, or to abrogate those changes in the law existing on December 1, 1873, which it had designedly made by other statutes passed since the latter date. Had such been the intent of the act of 1875, its passage would have involved a reconsideration and revision of every statute passed between December 1, 1873, and February 18, 1875.

6. It is urged, however, that if, by the moiety act, the forfeitures of value were already repealed, no reason remained why congress, in 1875, should pass the act to amend section 2864 of the revised stat-utes by inserting the words "or the value thereof," unless they in-tended to re-enact that provision of the law. What has been already said seems a sufficient answer to this objection. By the Revision congress had undertaken to declare what was the statutory law exist-ing on December 1, 1873. The Revised Statutes as enacted pur-ported and professed to state this law truly, (sections 5595, 5596,) but they did not do so. Section 2864, among others, was a false statement of the law as existing on December 1, 1873, in an impor-tant particular, through the omission of the words "or the value thereof." Historical truth, if nothing more, required the omission of these words to be supplied; otherwise, the statutes as enacted would remain a lasting monument of error. This alone, even if there were no practical reasons for correcting the error, would have been a sufficient reason for the amendment made by the act of 1875—an amendment which did not profess to be new legislation, but an amend-ment of the Revised Statutes only.

But there were reasons of a practical character, also, rendering it, if not essential, at least appropriate and desirable, that the correction should be made, notwithstanding the fact that forfeitures of value under section 2864 were already repealed by the moiety act. For the Revised Statutes, passed June 22, 1874, through the omission of the words "or the value thereof," seemed to declare that on December 1, 1873, and subsequent thereto, no law was in force authorizing a forfeiture of value for the causes stated in section 2864, (section 5596.) This was false and deceptive. The forfeiture of value had not been repealed by any existing law until the passage of the Revised Statutes and of the moiety act, on the same day, in June, 1874. Forfeitures of value might have been incurred upon entries made in the mean time, and suits therefor might have been then pending, in which the right of recovery would appear to be swept away, through the false declaration of the Revised Statutes, that on the first of December, 1873, notwithstanding the act of March 3, 1863, (section 2864,) only a proceeding for the forfeiture of the goods could be maintained. To prevent confusion and embarrassment in suits arising out of transactions occurring during the period from December 1, 1873, to June 22, 1874, it was desirable, if not necessary, that the correction of section 2864 should be made. The law forfeiting value was still in force during this period, notwithstanding the false declaration of section 2864, as originally enacted, and section 5596 to the contrary, (*U. S.* v. *Claflin,* 97 U. S. 548, 549;) but the false statement of what the law was on December 1, 1873, and afterwards, as presented by section 2864, as originally enacted, was calculated to create great practical embarrassment, and needed to be corrected accordingly.

For these reasons, I must treat the amendments made by the act of February 18, 1875, as parts of the Revised Statutes, and as though section 2864 had been originally enacted in its amended form. The moiety act, under section 5601, is to be regarded as subsequent legislation; and as section 12 of that act, both by implication and by clear repugnancy, repeals the pre-existing law authorizing the alternative forfeiture of the goods or their value in cases of fraudulent undervaluations, it follows that the plaintiff could not, upon any possible proof, recover; and a verdict must, therefore, be directed for the defendant.

---

This case was affirmed by WALLACE, J., on appeal to the circuit court, May 5, 1884. No opinion rendered.