Campbell, Chief Justice,
delivered the opinion of the court:
The case is before the court upon the defendant’s demurrer to the petition. The petition alleges that plaintiff is (as to part of its system of lines) a land-aided railroad. It transports the mails and certain of the mail routes to which this case solely relates are on lines aided by land grants from the United States. See Act June 10, 1852, 10 Stat. 8, and Act February 9,1853,10 Stat. 155. The last-named act provides “ That the United States mail shall at all times be transported on said road and branches under the direction of the Post Office Department at such price as Congress may by law direct.”
It is alleged that by the Act of July 28, 1916, 39 Stat. 412, the system theretofore existing of providing for mail transportation and other and additional services by means of contracts between the Post Office Department and the carriers concerned “ was terminated and it was made the duty of all railway companies ” to provide the service prescribed by the act. Setting forth the dimensions of the different kinds of post-office cars when constructed according to specifications made by the Postmaster General and the assignment of space therein to the several incidents it is alleged that “ neither said distributing facilities nor any part of the distribution space in railway post office cars are required or *526 necessary for the purpose of transporting the United States mail and are not provided as an aid thereto, but solely for the purpose of enabling the Post Office Department to utilize the time in transit for the performance of the administrative function involved in distribution.” It is further alleged that between June 1,1917, and December 31, 1917 (when the roads went under Federal control), and from March 1, 1917, to the filing of the petition the plaintiff, by reason of the act of 1916 and the requirements made thereunder by the Postmaster General has furnished to the United States “ over its land-grant mileage and elsewhere on its system of railroads services in addition to the service of transportation,” that the extent of the additional space is measured by the proportion which the distribution space in railway post-office cars “ furnished as stated,” bears to the total space “ in the cars furnished in accordance with the said requirements.” The suit is to recover for this so-called additional service, the plaintiff alleging that under the land-grant acts referred to its duty is limited to' the duty to “ transport ” the mails, and that it is not bound to furnish facilities for this “ distribution.” The payments made to it for the land-grant mileage of its system have been at the rate of 80 per centum of the rates fixed as reasonable by the Interstate Commerce Commission for the sexwice rendered “ without distinction as between space provided for transportation of the mails and space provided for distribution,” and as a consequence it is claimed that for the periods mentioned plaintiff has been deprived of the sum of $152,891.91 to which it claims to be entitled.
The act of 1916 provided a method for determining the amount of compensation the carriers should be paid for mail service. It gave the Postmaster General power to state railroad mail routes and authorize mail service thereon of four classes, namely: (1) Full railway post-office car service; (2) apartment railway post-office car service; (3) storage car service, and (4) closed pouch service, and the act defines each. The two first named, it is said, shall be service by cars (of forty feet or more in length in one class and less than forty feet in length in the other class), “ constructed fitted up and maintained for the distribution of mails on trains.” It pro *527 vides that service by these two classes “ shall include the carriage therein of all mail matter, equipment, and supplies for the mail service” and the employees of the service. The rates of payment for the service authorized in accordance with this section 5 of the act are stated for each of the four classes of service named, and this statement of rates is followed by the provision:
“ Bailroad companies whose railroads were constructed in whole or in part by a land grant made by Congress, on the condition that the mails should be transported over their roads at such price as Congress should by law direct, shall receive only eighty per centum of the compensation otherwise authorized by this section.”
It is required that all cars and parts of cars used for the Bailway Mail Service shall be of “such construction, style, length, and character, and furnished in such manner as shall be required by the Postmaster General,” and be constructed, maintained, heated, and cleaned at the carriers’ expense. Bailroad companies are required to furnish “ all necessary facilities for caring for and handling ” the mails while in their custody, and to “ furnish all cars or parts of cars used in the transportation and distribution of the mails,” except as in the act otherwise provided. The act empowers the Interstate Commerce Commission “ to- fix and determine from time to time the fair and reasonable rates and compensation for the transportation of such mail matter by railway common carriers and the service connected therewith,” and to prescribe the method by weight or space or otherwise and the procedure for such ascertainment of rates and compensation is set forth (p. 429). At the conclusion of the authorized hearing the commisison is to establish by order “ a fair, reasonable rate or compensation ” to be received by the carriers for the transportation of mail matter and the service connected therewith,” and this compensation the Postmaster General is authorized to pay out of the proper appropriation. It is also provided (p. 430) that:
“ Either the Postmaster General or any such carrier may at any time after the lapse of six months from the entry of the order assailed apply for a reexamination, and thereupon substantially similar proceedings” (as in the procedure *528 above referred to) “ shall be bad with respect to the rate or rates for service covered by said application.”
After conferring on the commission for the purposes of section 5 all the powers it is authorized to exercise in the ascertainment of rates to be paid by private shippers, the act provides (id. 430) :
“ The Interstate Commerce Commission shall allow to railroad companies whose railroads were constructed in whole or in part by a land grant made by Congress on condition that the maiis should be transported over their roads at such price as Congress should by law direct, only eighty per cent of the compensation paid other railroads for transporting the mails and all service by the railroads in connection therewith.
This act makes or authorizes an important change in the method prevailing before its enactment for fixing the compensation of railroads handling the mails. Provision is made, however, for ascertaining just compensation and the procedure required by the act has been followed. The Interstate Commerce Commission has determined upon the space method in lieu of weight. The statute as already stated had provided for payment for service at so much for each mile of service by the different-sized cars. These rates were increased by the commission, and the petition avers that the commission fixed and determined for all services required to be performed by the act of 1916 and performed between the dates of November 1, 1916, and January 1, 1918, rates as follows:
Cents
For each mile of service by a 60-foot ft. P. O. car_ 27
For each mile of service b5r a 30-foot apartment car- 15
For each mile of service by a 15-foot apartment car- 10
For e'aeh mile of service by a 60-foot storage car- 28
For each mile of service by a 30-foot storage space- 15
For each mile of service by a 15-foot storage space_ 8
For each mile of service by a 7-foot storage space- 4%
For each mile of service by a 3-foot storage space- 2%
For each mile of service by a 15-foot closecl-pouch space- 10
For each mile o'f service by a 7-foot closed-pouch space- 5
For each mile of service by a 3-foot storage space- 2%
For each mile of service by a 7-foot closed-pouch space_ 5
For each mile of service by a 3-foot closed-pouch space- 3
For all of said service required to be performed on and after January 1, 1918, the commission fixed and determined, *529 as fair and reasonable rates for all railroads and for all routes, rates 25 per centum in excess of the scale of rates last above set out. These rates have not been modified.
The Government challenges the court’s jurisdiction. It is pointed out that if the action be based upon the act of 1916, a law of Congress, the facts show that the plaintiff has been paid in accordance with that act. If the act itself be not a valid exercise of its legislative power by Congress it would seem doubtful at least whether plaintiff was bound to do what the act enjoins. We think the act is valid and that Congress intended that the compensation to land-aided roads should be determined and applied as has been done in this case. It is to be conceded that these statutes do not of themselves devolve every kind of service that may be demanded or enjoined by the department or a statute. But on the other hand these same statutes are not to be so narrowly construed as to render their operation impracticable. When they declare that the mails shall be transported under the direction of the Post Office Department we think they imply more than the mere placing of the mails in bulk in a car to be carried between given termini. The bulk changes by additions to it and subtractions from it. The making of these additions and subtractions as the different stations are reached involve space additional to that occupied by the bulk itself. What is to he transported is not mere weight bulk or freight but the “ mails ” and the act must be construed to give effect to its purpose.
If the Post Office Department could give no directions relative to the service, the words authorizing them would not be in the statute. Nor do we think the directions thus authorized to be given are to be limited to the methods in vogue in 1853. The price for which the transportation under the direction of the department shall be made is “ such price as Congress may by law direct.” Whether this price is compensation or not is not the question, but- the act of 1916 provides for the ascertainment of just compensation to the railroads for transporting the mails and rendering service in connection therewith. The just compenstion thus fixed is not even questioned. Congress did not overlook the question *530 that as to land-aided roads it could fix the price in accordance with the terms of the land-grant statutes. As early as 1876 they provided that land-aided roads should receive only 80 per cent of the* compensation authorized by the act of that year, 19 Stat. 82, and the act of 1916 adopts the basis of 80 per cent, but applies it to the compensation which is to be paid other railroads, not alone for carrying the mails but for “ all service ” by the railroads in connection with transporting them. Manifestly Congress had in contemplation all manner of service which was to be required, and it limited the pay to land-aided roads to 80 per cent of what nonland-aided roads could receive for this service.
Unless this be true it can not be affirmed that Congress fixed 80 per cent as the compensation for their mere conveyance. Having the right to' fix the price for transportation (if the narrow view of that element be adopted), and if it be assumed that the other service, distribution for instance, was additional service that must be paid for at full rate, it is but reasonable to adopt the view that when Congress declared the land-aided road should be paid 80 per cent of the whole compensation fixed for all the kinds of service, its enactment implies that all these different elements were considered. Congress was not required to pay 80 per cent of the cost of transportation. It could have fixed “ the price ” at less. In certain acts there are provisions that the railroads shall be and remain public highways for the use of the Government, free of toll for the transportation of troops or property of the United States, and under these acts it was held that the railroad was entitled to be paid for the use of its rolling stock or other personal property. For the actual service the proportion of 50 per cent for the highway and 50 per cent for the transportation was made. See Lake Superior & Mississippi Raibroad Co. case, 93 U. S. 442. In the Army appropriation acts there will generally be found provisions relative to payment to land-grant roads and to the effect that such roads for Army transportation shall not receive in excess of 50 per cent of the compensation to other roads for like service. See Army appropriation act, 39 Stat. 633. These instances serve to illustrate our view that by the act of 1916 Congress did *531 not intend that for transportation alone, 80 per cent was to be allowed by the commission. Nor did it say that the commission having ascertained just compensation for a non-land-grant road should allow 80 per cent of a part of such ■compensation to the land-grant road.
The commission determined the compensation allowable for certain types of cars “ for each mile of service,” and the statute provides that the land-grant road shall receive 80 per cent of this compensation which the ascertained rate produces for each mile of service. The plaintiff has been paid accordingly. The ascertainment of the compensatory rate and the method to be adopted are confided to the commission and not to the Court of Claims. A carrier dissatisfied Avith the rates may apply to the commission for a reexamination with respect to the rates for service covered by the application. (Sec. 5, p. 430.) When Congress by this act established certain rates as applicable until action by the Interstate Commerce Commission should be had it provided that land-grant roads should receive only 80 per cent of “ the compensation otherwise authorized by this section.” Congress went further and provided that these roads should receive only 80 per cent of the compensation paid other roads for transporting the mails and all other service. To say it was meant that land-grant roads should be paid foi» “ transporting ” the mails 80 per cent of what other roads were being paid for transportation and all service of every kind relative to the mails, and then be paid in addition for these other services, would be a most extreme position. The commission does not seem to have entertained such a view. See Railway Mail Pay, 56 I. C. C. 1. They fixed the value of an entire car on the mileage basis. Their decision follows the statutory method and does not itemize the values of the different portions of the car, whether used for one or another purpose. Considering the part of the act which prescribed 80 per cent land-grant roads, the Interstate Commerce Commission says (56 I. C. C. 77) :
“ It is contended by the railroads that this provision of law should not apply to the distributing space in IÍ. P. O. and aj>artment cars, because the service of carrying distributing facilities can not properly be construed as' transportation *532 of the mails as defined in the law. As a matter of fact, a small quantity of mail is hauled in the racks and partitions of the distributing facilities. Its amount can not be ascertained, because it is constantly changing as the clerks' in charge distribute the mails en route. We are not convinced that Congress intended that services in connection with transporting the mails on land-grant railroads, such as furnishing and hauling distributing facilities, should not be subject to the reduction referred to.”
The Act of 1916 was manifestly intended to provide a system for settling the differences between the Post Office Department and the transportation companies, that arose under the prevailing method. To this end the commission was empowered to “ fix and determine ” the fair and reasonable rates and compensation for the transportation of “ mail matter by railway common carriers and the service connected therewith ” and to prescribe the method by weight, space or otherwise, to publish its orders, ascertaining the same, and these orders so> made and published to continue in force “ until changed by the commission after due notice and hearing.” It is not questioned that the commission has discharged this duty and its rates are not objected to. Claiming that its action is based upon a law of Congress, the plaintiff asks to be paid a sum additional to what this same act allows. But we think the claim can not be under the statute and against it at the same time. In order to maintain the action, it is necessary for plaintiff to show a contract express or implied, “ or a statute liability on the part of the defendants.” Ludington case, 15 C. Cls. 453. If the Post Office Department had refused to pay plaintiff compensation fixed by the commission, it could have urged that its action therefor was based upon the law of Congress directing that payments be made in accordance with the commission’s decision, but when plaintiff 'has been paid all the statute allows to be paid the action is not founded on the law. Nor is the action founded on the fifth amendment. See North American Co. case, 253 U. S. 330, 335. As we understand its contention, the plaintiff insists that the commission reported that in the different cars the full railway post-office 60-foot car, for instance, the total linear feet of space therein is made up of 36 feet of “ distribution space,” 8 feet (approximately) “ doorways ” *533 and 16 feet (approximately) of “ storage space,” but ascertained the compensation to be paid for a 60-foot railway post-office car 27 cents for each mile of service by it, and that therefore plaintiff should be paid at the rate of 36/60 of 27 cents per mile and 80 per cent of 16/60 of 27 cents for each mile of service, thus confining the land grant element to a supposed value of the “ storage space.” The commission has not ascertained the values of the space or fixed compensation in the way suggested. They fixed compensation for the car, and all its space. The act authorizes the Postmaster General to prescribe the kind of car and authorizes the commission to fix compensation on the space method. On the other hand, the court is not authorized to prescribe the method or fix compensation, and it can not assume that because the commission fixed a rate per mile for the entire car, it fixed, or intended to fix, a separate basis of compensation for each of the different spaces used in it. As already said, distribution of the mails can not be entirely separated from their transportation. The plaintiff has been paid for the service rendered in accordance with the rates and compensation fixed by the commission, and, so far as appears, received the payments as they accrued without protest or objection.
We think the demurrer should be sustained. And it is so ordered.
Geah:am, Judge; Hay, Jtidge; Downey, Judge; and Booth, Judge, concur.