Mr. Justice WAYNE
 

 delivered the opinion of the court.
 

 We shall direct the reversal of the judgment of the Circuit Court in this case, on account of three erroneous instructions which were given to the jury. The prayers upon which those instructions were given are the fifth, sixth, and seventh.
 

 
 *379
 
 They involve the question, as-to the time when the right of forfeiture attaches upon the entry of goods invoiced at less than their value at the place of exportation, under a statute which declares in such a case, that either the goods, or the value of them, shall be forfeited.
 

 The instructions were' given by the learned judge in the court below, upon the supposition that they were required by the decision which this court made in "Wood’s case, 16 Peters, 342, particularly upon account of a sentence in the opinion at the three hundred and sixty-fifth page of the volume.
 

 It was supposed to be a repetition in that case of what had been adjudged by the court, in the cases of The United States
 
 v.
 
 1960 Bags of Coffee, and in The Brigantine Mars, 8 Cranch, 398, 417. Or that those cases did not permit instructions to be given to the jury as they were asked by the counsel for the claimants, and did permit the court to give the following: — That the title of the United States vested in the goods entered upon an undervalued invoice, at the time the fraud was committed, and the law authorized the United States to seize the goods wherever they might be found.
 

 Neither of the cases mentioned authorizes such a conclusion. There is a sentence in Wood’s case, from which it may be made, unless it is carefully considered in connection with the last of the paragraph and with the first part of the next. That sentence is, — “ But under the sixty-sixth section no such allegations would be necessary or proper, as the forfeiture immediately attaches to every entry of goods falsely and fraudulently invoiced, without any reference whatever to the mode or the circumstances under or by which it was ascertained.”
 

 The sixty-sixth section of the act to regulate the collection of duties upon imports and tonnage, (1 Statutes at Large, 677,) is, “ that if any goods, wares, or merchandise, of which entry shall have been made in the office of a-collector, shall not be invoiced according to the actual cost thereof at the place of exportation, with design to evade the duties thereupon, or any part thereof, all such goods, wares, and 'merchandise, or the value thereof, Jo be recovered from the person making the entry, shall be forfeited.”
 

 It cannot be correctly said, when the declaration of forfeiture is disjunctively one or the other, of either the goods or their value, that the forfeiture upon the fraudulent entry necessarily and compulsively comprehends the first, to the exclusion of the value of the goods, which is also said may be a forfeiture ■— that is, that the goods are forfeited with a right in the government to assert a forfeiture of the value too, where the pen
 
 *380
 
 alty for the fraud committed can only be One of them, and not both; or that when this court said in Wood’s case, speaking of the sixty-sixth section, that “forfeiture immediately attaches to every entry of goods falsely and fraudulently invoiced,” it was not intended to embrace either or both penalties, between which the United States might make its election for the punishment of the fraud.
 

 That such is the meaning of the sentence already cited from Wood’s case is shown by the court’s recognition,..in the next, of the alternative forfeiture of the value of the goods, to be recovered of the person making, the false entry; and, also, by the use it makes of it, to show that the sixty-sixth section had not been repealed, because no such provision exists in the acts of 1830 or 1832, and no subsequent act covers all the cases provided for by it. The point in discussion in that part of the opinion was, whether the sixty-sixth section of the act of 1799, ch. 22, had been repealed, or whether it was in full force. The court, arguing against the repeal, used the alternative forfeiture in it of the value of the goods, and the want of the same in other acts, to show that it was still in full force; in that way satisfactorily establishing that the words, “ the forfeiture immediately attaches to every entry of goods falsely and fraudulently invoiced,” apply to the entry; not to make the goods a vested forfeiture in the United States, but to show that the right in the United States to either forfeiture is coexistent with the commission of the fraud.
 

 But if the explanation given of that part of Wood’s case shall not bé as satisfactory to others as it is to ourselves, though we think it will be so to all .persons, we then say, that the point there in discussion, concerning the sixty-sixth section, is altogether different from that which we are here considering under the same section; and that any declaration concerning it used argumentatively, only to show a difference between it and other statutes in a point of pleading, as is the fact in that part of the opinion, cannot be an applicable authority, much less controlling, when the inquiry under the • same statute is its meaning in. respect to the attachment of penalties in it for its violation.
 

 In Wood’s case, the point in discussion is, that the United States aré not entitled to recover under the third count in that information, because the sixty-sixth section of the act of Congress, passed' the 2d of March, 1799, entitled “an act to regulate the collection of duties on imports, &c.,” was not in force when the goods mentioned in the count were imported.
 

 The point we. are now considering, arising under the same
 
 *381
 
 section, is, Are goods entered upon an invoice not according to the value thereof at the place of exportation, with design to evade the duties thereon or any part thereof,
 
 eo instanti
 
 upon the false entry a forfeiture to the United States, so as to avoid an intermediate sale of them to a
 
 bona fide
 
 purchaser, or one altogether ignorant of the fraud, and in no way connected with the perpetrator of it, except in buying the goods from him for a fair price ? The claimants in this case contended, in the trial in the Circuit Court, that neither under the sixty-sixth nor .the sixty-eighth section were the goods,
 
 eo instanti
 
 upon the commission of the fraud, forfeited to the United States, “ if the goods seized had been fairly and
 
 bond fide
 
 purchased by them, without any knowledge by them of their being liable to seizure, and were, at the time of the,seizure, openly exposed by them for sale in their stores, though the goods had been ifraudulently or falsely invoiced or entered,- provided the claimants were in no way parties thereto.” And,
 
 “
 
 that though the goods in question had been invoiced at less than actual cost of them at the place of exportation, with design to evade the duties thereon, the United States had no title in the goods until they made their election, either to recover the goods themselves, or the value thereof. And that any rights in said goods acquired
 
 bond fide
 
 by third persons in the mqan time are protected against the right of forfeiture under the sixty-sixth section.
 

 The claimants asked that such instructions should be given by the court to the jury. The court refused, but .did instruct the jury, “ that if the goods were fraudulently entered, it is no matter in whose possession they were when seized, or whether the United States had made an election between the penalties ; and that the forfeiture took place when the fraud, if any, was committed, and -the seller of the goods could convey no title to the purchaser.” This instruction is partly right and partly wrong; right in respect to the sixty-eighth section, as the penalty is the forfeiture of the goods without an alternative of their value; wrong as the instruction applies to the sixty-sixth section, the forfeiture under it being either the goods or their value.
 

 In the first,
 
 the forfeiture
 
 is,
 
 the statutory transfer of right to the goods at the time tho offence is committed.
 
 If this was not so, the transgressor, against whom, of course, the penalty is directed, would often escape punishment, and triumph in the cleverness of his contrivance by which he has violated the law. The title of the United States to the goods forfeited is not consummated until after judicial condemnation; but
 
 the right to them
 
 relates backwards to the time the offence was committed,
 
 *382
 
 so as to avoid all intermediate sales of them between the commission of the offence and condemnation.
 

 So this court said in the case of United States
 
 v.
 
 1960 Bags of Coffee, 8 Cranch, 398. It was said again, in the case of The United States
 
 v.
 
 Brigantine Mars, 8 Cranch, 417. Declared again four years afterwards, in Gelston
 
 v.
 
 Hoyt, 3 Wheat. 311, in these words: — “ The forfeiture' must be deemed to attach at the moment the offence is committed,” so as to avoid all sales afterwards.
 

 The differences in time when the transfer of right in forfeited goods takes place, under such provisions for forfeiture as are found in the sixty-sixth and sixty-eighth sections of the act of 1799, were fully considered and ruled by this court in United States
 
 v.
 
 Grundy and Thornburg, 3 Cranch, 337. It was afterwards noticed and assented to by the Attorney-General of the United States, in his argument in the case of the 1960 Bags of Coffee, 8 Cranch, 398; and has always been considered, from the time it was made, as the proper interpretation of a statute providing for a forfeiture for an offence, either of goods or
 
 their value.
 
 No case can be found in our. own or the English courts in conflict with hA
 

 We must therefore say,, that the instructions given upon the. fifth and sixth prayers of the claimants were erroneous.
 

 Our conclusion, also, is, that there was error in the instruction given by the court upon the seventh prayer of the claimants. The prayer is, “that the United States ate-not entitled to recover, under the
 
 first and second counts
 
 of the information, unless the goods were unladen and delivered without permits.” The difference between the first and second counts is, that the allegation in the first is, that the goods were brought into some. port or place in the United States
 
 unknown,
 
 unladen and delivered; and in the second, that they, were brought into the
 
 fort of New York,
 
 and unladen and delivered there; and in both, without any permit or special license from the collector, or any other competent officer of the customs.
 

 .'The response of .the court to the prayer is, — “If. the permits were obtained by fraud and improper means, they were of no effect, and a. mere nullity. The United States are entitled to recover, if the goods were imported with the view to defraud the revenue.”
 

 ' ;The direct and proper response-to that prayer ought to have been, that, as the first and second counts were framed upon the fiftieth section .of the act of 1799, by which a 'fine is imposed upon persons unlading and delivering goods without a permit, if the jury should 'find that the goods in question had been.
 
 *383
 
 so unladen by the claimants, then they were liable to the penalty provided in that section; or if the goods were unladen by them with a permit, the jury could not find a verdict against the claimants upon the first and second counts.
 

 The prayer does not involve, either in- terms or inferentially from them, the legal effect or sufficiency of a permit obtained by improper means, or fraud upon the unlading of goods under it; or that the permit under which the goods in question may have been landed had been fraudulently obtained, and the goods landed under it by the claimants. When, then, the jury were told, that a permit obtained by fraud or improper means was of no effect and a nullity, it was virtually saying to them, that a verdict might be returned upon the first and second counts against the claimants, and that they were liable to the penalties of the act for unlading goods without a permit, without saying, if they thought that there was evidence enough to prove the fact against them. And the court, by adding, that “the United States are entitled to recover, if
 
 the goods were imported with the view to defraud the
 
 revenue,” stated a proposition out of the case; for there was no such count in the information, or- any statute of the United States, for the punishment of frauds in the importation of goods, upon which a count could have been framed in the words of the instruction. The instruction was calculated to mislead the jury into a conclusion, that the suit was against the claimants for a meditated fraud in the importation of the goods in question, which had rendered them liable to be forfeited.
 

 It is not necessary to notice the other prayers asked, refused, and given in this case. It was argued before this court only upon the three already stated, the answers to which we have said-are erroneous.
 

 We shall; therefore, remand the cause, with an order for the reversal of the judgment, and for a
 
 venire de novo,
 
 that further proceedings may be had thereon in conformity with this-opinion.
 

 Order.
 

 This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Eastern District of Pennsylvania, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court affirming the judgment of the District Court in this cause be, and the same is hereby, reversed, and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to enter a disaffirmance of the judgment of the District
 
 *384
 
 Court, and to remand this cause to the said District Court, with directions to that court to award a
 
 venire facias de
 
 novo, and for further proceedings to be had therein in conformity to the opinion of this court.