Mr. Justice BRADLEY
 

 delivered the opinion of the court.
 

 The claimants insist, in the first place, that no recovery can be had under the information on the conceded facts of the case. The information contained three counts relied on: one on section 45 of the act of July 13th, 1866, and two on section 48 of the act of June 30th, 1864, as amended by act of July 13th, 1866. The first-named section declares that “ all distilled spirits found elsewhere than in a bonded warehouse, not having been removed from such warehouse according to law, and the tax imposed by law not having been paid, shall be forfeited.” The first count charges that the spirits in question were thus found. It is insisted that they were removed according to law.
 

 We do not think that a removal procured by a false and fraudulent bond, though accepted by the collector, was a removal according to law, and we fail to perceive how the spirits which were thus withdrawn from the bonded warehouse can be exempted from the operation of this section.
 

 The other section, on which the second and third counts were framed, declares that “ all goods, wares, merchandise, articles or objects, on which taxes are imposed by the provisions of law, which shall be found in the possession, or custody, or within the control of any person or persons in fraud of the internal revenue laws, or with design to avoid payment of said taxes, may be seized, &c., and shall be forfeited to the United States.” It is insisted that this section does not apply to distilled spirits, inasmuch as they are provided for in a different part of the act by a distinct series of sections.
 

 An examination of the act of 1864 will show that the first fifty-two sections are of a general character, intended to
 
 *365
 
 apply to all taxes imposed by
 
 the
 
 act, and that the 48th section is especially of that character, and applies to distilled spirits as well as all other articles. By the act of 1866 this section was amended in a manner not material to the question at issue. When thus amended it still stood as it did before, having the same office and the same general application. The addition in the act of 1866 of several new sections relating to the removal of distilled spirits from a bonded warehouse, and imposing penalties and forfeitures •for giving fraudulent bonds for that purpose, or for illegally removing the spirits, does not deprive the 48th section of the act of 1864'of its general application. There is nothing incongruous or repugnant between it and the new sections. Both can stand, and an information may be founded on both or either, whenever the facts will admit. It is a very common thing for cumulative remedies to be thus provided. The act of 1868, which revises the entire revenue law relating to spirits and tobacco, furnishes a striking instance of this. After providing for a large number of specific forfeitures, or forfeitures for specific breaches of the law, it follows up the subject by sections of the most general nature, so framed as not to admit of any possible escape or evasion, and which necessarily include most of the cases before specifically provided for. Statutes
 
 in pari
 
 materia, like the acts of 1864 and 1866, are to be construed together, and repeals by implication are not favored if the acts can reasonably stand together.
 

 The other points made by the claimants relate to the charge given by the court to the jury. Passing over the first and second instructions prayed for, which are not insisted on, and are not tenable if they were, the third and fourth demand attention. The substance of the third instruction prayed for was, that if the spirits were removed from the warehouse according to the forms of law, and the claimants bought them without knowledge of the fraud,
 
 they
 
 were not liable to forfeiture. The court charged in accordance with this prayer with this qualification, that if Boyden bought the spirits as agent for Harrington, and was
 
 *366
 
 cognizant of the fraud, Harrington would be bound by his knowledge. The claimants insist that this is not law. '
 

 The question how far a purchaser is affected with notice of prior liens, trusts, or frauds, by the knowledge of his agent who effects the purchase, is one that has been much mooted in England and this country. That he is bound and affected by such knowledge or notice as his agent obtains in negotiating the particular transaction, is everywhere conceded. But Lord Hardwieke thought that the rule could not be extended so far as to affect the. principal by knowledge of the agent acquired previously iii a different transaction.
 
 *
 
 Supposing it to be clear, tha* the agent still retained the knowledge so formerly acquired, it was certainly making a very nice and thin distinction. Lord Eldon did not approve of it. In
 
 Mountford
 
 v.
 
 Scott,
 

 †
 

 he says: “.It may fall to be considered whether one transaction might not follow so close upon the other as to render it impossible to give a man credit for having forgotten it. I should be unwilling to go so far as to say, that if an attorney has notice of a transaction in the morning, he shall be held in a court of equity to have forgotten it in the evening; it must in all cases depend upon the circumstances.” The distinction taken by Lord Hardwieke has since been entirely overruled by the Court of Exchequer Chamber in the case of
 
 Dresser
 
 v.
 
 Norwood.
 

 ‡
 

 So that in England the doctrine now seems to be established, that if the agent, at the time of effecting a purchase, has knowledge of any prior lien, trust, or fraud, affecting the property, no matter when he acquired such knowledge, his principal is affected thereby. If he acquire the knowledge when he effects the purchase, no question can arise as to his having it at that time; if be acquired it previous to the purchase, the presumption that! he still retains it, and has it present to bis mind, will depend on the lapse of time and other circumstances. Knowledge communicated to the principal himself he is bound to recollect, but he is not bound by knowledge communicated to his
 
 *367
 
 agent, unless it is present to the agent’s mind at the time of effecting the purchase. Clear and satisfactory proof that it was so present seems to be the only restriction required by the English rule as now understood. With the qualification that the agent is at liberty to communicate his knowledge to his principal, it appears to us to be a sound view of the subject. The general rule that a principal is bound by the knowledge of his agent is based on the principle of law, that it is the agent’s duty to communicate to his principal the knowledge which he has respecting the subject-matter of negotiation, and the presumption that he will perform that duty. When it is not the agent’s duty to communicate such knowledge, when it would be unlawful for him to do so, as, for example, when it has been acquired confidentially as attorney for a former'client in a prior transaction, the reason of the rule ceases, and in such a case an agent would not be expected to do that, which would involve the betrayal of professional confidence, and his principal ought not to be bound by his agent’s secret and confidential information. This often happened in the case of large estates in England, where men of great professional eminence were frequently consulted. They thus became possessed, in a confidential manner, of secret trusts or other defects of title, which they could not honorably, if they could legally, communicate to subsequent clients. This difficulty presented itself to Lord Hardwicke’s mind, and undoubtedly lay at the bottom of the distinction which he established. Had he confined it to such cases, it would have been entirely unexceptionable.
 

 The general tendency of decisions in this country has been to adopt the distinction of Lord Hardwicke, but it has several times been held, in consonance with Lord Eldon’s suggestion, that if the agent acquired his information so recently as to make it incredible that he should have forgotten it, his principal will be bound. This is really an abandonment of the principle on which the distinction is founded.
 
 *
 
 The case
 
 *368
 
 of
 
 Hart
 
 v.
 
 Farmers’ and Mechanics’ Bank
 

 *
 

 adopts the rule established by the case of
 
 Dresser
 
 v.
 
 Norwood.
 
 'Other cases, as that of
 
 Bank of United States
 
 v. Davis,
 
 †
 

 New York Central Insurance Co.
 
 v.
 
 National Protection Co.,
 

 ‡
 

 adhere to the more rigid view.
 
 §
 

 On the whole, however, we think that the rule as finally settled by the English courts, with the qualification above; mentioned, is the true one, and is deduced from the best consideration of the reasons on which it is founded. Applying it to the case in hand, we think that the charge was substantially correct. The fair construction of the charge is, that if the jury believed that Boyden, the agent, was cognizant of the fraud at the time of the purchase, Harrington, the principal, was bound by this knowledge. The precise words were “ that if Boyden bought the spirits as agent for Harrington, and Boyden was cognizant of the fraud, Harrington would be bound by his knowledge.” The plain and natural sense of these words, and that in which the jury would understand them, we think, is that they refer to Boy-den’s knowledge at the time of making the purchase. Thus construed the charge is strictly in accordance with the law as above explained. There was no pretence that Boyden acquired his knowledge in a fiduciary character.
 

 This result is arrived at independent of the question whether an innocent purchaser without notice can, in any case, claim precedence of the title of the United States arising by forfeiture. It has frequently been held that he cannot do so in cases of statutory forfeitures ensuing from acts done or omitted.
 
 ǁ
 
 But as this point was not argued or raised we do not put the ease upon it.
 

 We see no error in the fourth instruction given. It needs
 
 *369
 
 no learned examination of the doctrine of confusion or mixture of goods to make it apparent that if certain spirits belonging to the government by forfeiture are voluntarily mixed with other spirits belonging to the same party and passed through the process of rectification in leaches, he cannot thereby deprive the government of its property; and if the government only claims its fair proportion of the rectified spirits, he certainly cannot complain of injustice. The only result of applying the doctrine of confusion of goods would be to forfeit the entire mixture. And it cannot be claimed that the process of rectification in leaches effects such a transmutation of species as to destroy the identity of the liquor. If, after the mixture and before the rectification, a certain proportion of the spirits belongs to the United States, they will not lose that proportion by the spirits being passed through the leaches for the purpose of rectification.
 

 Judgment aeeirmed.
 

 *
 

 Warrick
 
 v.
 
 Warrick, 3 Atkyns, 291.
 

 †
 

 1 Turner & Russell, 274.
 

 ‡
 

 17 Common Bench, N. S. 466.
 

 *
 

 Story on Agency, $ 140; Hovey
 
 v.
 
 Blanchard, 13 New Hampshire, 145; Patten
 
 v.
 
 Insurance Co., 40 Id. 375; Hart
 
 v.
 
 Farmers’ & Mechanics’ Bank, 33 Vermont, 252.
 

 *
 

 33 Vermont, 252.
 

 †
 

 2 Hill, 452.
 

 ‡
 

 20 Barbour, 468.
 

 §
 

 See cases collected in note to American edition of 17 Common Bench, N. S., p. 482, and Mr. Justice Clifford’s opinion in the Circuit Court in the present case.
 

 ǁ
 

 United States v. Grundy, 3 Cranch, 338; Same
 
 v.
 
 1960 Bags of Coffee, 8 Cranch, 398; Fontaine
 
 v.
 
 Phœnix Insurance Company, 11 Johnson, 293; Kennedy
 
 v.
 
 Strong, 14 Id. 128; The St. Jago de Cuba, 9 Wheaton, 416; The Florenzo, 1 Blatchford & Howland, 60.