## WRIGHT et al. v. ELLWOOD IVINS TUBE CO.

### (Circuit Court, E. D. Pennsylvania. February 16, 1904.)

### No. 27.

1. **LIEN—ADVANCES FOR PURCHASE OF MATERIAL FOR MANUFACTURE—RESERVATION OF TITLE.**

   Where, by a contract between them, a commission firm were to act as selling agents for a tube company, and were to make advances for the purchase of steel, and further advances on such of the finished product as was sold through their agency, settling the final balance in cash, a provision of such contract that the steel so purchased should remain the property of the commission firm, in whatever state of manufacture it might be, until the tubing made therefrom was delivered to them, is valid as between the parties, and is enforceable against a receiver appointed for the company in proceedings to wind up its business.

2. **CONFUSION OF GOODS—IDENTIFICATION OR PROPORTIONATE DIVISION—BURDEN OF PROOF.**

   The tube company having mingled its own unfinished tubes with those made from steel purchased by the agents under such agreement in such manner that they could not be identified, although such confusion was innocent, the burden rests upon the company or its receiver to establish the proportion which was made from its own steel; otherwise the lien of the agents extends to all.

On Exceptions to Master's Report.

Frank A. Hartranft and Francis S. Laws, for exception.

Thomas Leaming, opposed.

J. B. McPHERSON, District Judge. It is, no doubt, true that the agreement between the tube company and Herman Boker & Co. provided that the tube company should buy steel at market rates, should manufacture it into tubing, and sell a part of it through Boker & Co., as their factors or general selling agents, and that Boker & Co. were to make advances after the usual manner of commission merchants—first by paying for the raw material, and later by advancing a further sum upon the manufactured product, or upon such part of it as the tube company might sell through their agency—and were to settle the final balances in cash. But I see nothing in such an agreement to invalidate the fourteenth article of the contract, which reads as follows:

"This steel will be the property of Herman Boker & Co., whether in billets or in more or less state of manufacture, and remain their property until the tubing to be made of same is delivered to Herman Boker & Co."

Whatever might be the effect of the contract, taken as a whole, if the controversy were between Boker & Co. and the creditors of the tube company, it seems to me that it was competent for the parties, as between themselves, to make the foregoing agreement concerning the title to the steel; and, since the right of the receiver rises no higher than the right of the tube company, it follows that the title to the partially manufactured steel in question was in Boker & Co. when this bill to wind up the corporation's business was filed. This being so, it follows, also, that as the tube company mingled with its own unfinished tubes similar merchandise that was made from the steel that came into its hands by virtue of the agreement with Boker & Co., and as it is con-

fessedly impossible to point out which particular tubes belonged to the one owner and which belonged to the other, a confusion of goods has resulted. The question to be now decided is, what consequences are to follow? The confusion was innocent, and, as the different sizes of tubes are practically alike in appearance and in quality, if the proportion to which each owner is entitled could be ascertained there would be little difficulty, I think, in making a fairly accurate separation. But I cannot agree with the master that the burden was on Boker & Co. to establish what proportion was theirs. On the contrary, I think the authorities show clearly that the burden of separation rests upon him by whose act, innocent though it was, the confusion came about. In The Idaho, 93 U. S. 586, 23 L. Ed. 978, the Supreme Court say with reference to a willful intermixture:

"But even if they [the bales of cotton] were of the same kind and value, the wronged party would have a right to the possession of the entire aggregate, leaving the wrongdoer to reclaim his own, if he can identify it, or to demand his proportionate part."

In Story on Bailments (8th Ed.) on page 41, the rule is thus laid down:

"The conclusion to be drawn from these decisions and other authorities seems to be that in cases of negligent and inadvertent mixtures (perhaps even of willful mixtures), if the goods can be easily distinguished and separated, then no change of property takes place, and each party may lay claim to his own. If the goods are of the same nature and value, although not capable of an actual separation by identifying each particular, yet if a division can be made of equal value (as in the case of a mixture of corn, or of coffee, or tea, or wine of the same kind and quality), there each may claim his aliquot part. But, if the mixture is undistinguishable, and a new ingredient is formed, not capable of a just appreciation and division according to the original rights of each, there the party who occasions the wrongful mixture must bear the whole loss."

In The Distilled Spirits, 78 U. S., on pages 368 and 369, 20 L. Ed. 167, the Supreme Court say:

"It needs no learned examination of the doctrine of confusion or mixture of goods to make it apparent that if certain spirits belonging to the government by forfeiture are voluntarily mixed with other spirits belonging to the same party, and passed through the process of rectification in leaches, he cannot thereby deprive the government of its property; and, if the government only claims its fair proportion of the rectified spirits, he certainly cannot complain of injustice. The only result of applying the doctrine of confusion of goods would be to forfeit the entire mixture." ·

The rule is thus stated in 6 Am. & Eng. Ency. of Law (2d Ed.) 598, note 1:

"If a party having charge of the property of another so confounds it with his own that the line of distinction cannot be traced, all the inconvenience of the confusion is thrown upon him who produces it, and it is for him to distinguish his own property, or lose it." Citing Hart v. Ten Eyck, 2 Johns. Ch. 62, and other cases.

I think it is clear from these citations, and upon reason, that, even although the confusion be innocent, nevertheless it is a legal wrong to the party whose goods are thus put beyond his reach, and therefore that the tort feasor is bound to repair his wrong as far as possible, and

separate his own goods from the mass, at the risk of losing them to the innocent party. The exceptions of Boker & Co. must be sustained.

With regard to the exceptions of George Kelly, I see no reason for interfering with the discretion of the master in refusing to reinstate the exceptions after they had been withdrawn. The petition to file the exceptions in court is therefore refused.

A decree of distribution may be entered in accordance with this opinion.