## UNITED STATES v. FEDERAL MAIL ORDER CORPORATION et al.

### No. 153.

Circuit Court of Appeals, Second Circuit.
Jan. 12, 1931.

Robert E. Manley, Acting U. S. Atty., of New York City (Alvin McKinley Sylvester, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Emanuel Hertz, of New York City, for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The defendants are three persons engaged in the sale of Swiss watches at an office or depot on Broadway, New York, under the name of the Federal Mail Order Corporation and Superfine Watch Company. In September, 1929, suspecting that they had been smuggling Swiss watches and watch movements, a customs agent procured a search warrant on which he searched this office, and seized all the Swiss watches which he found. The defendants moved to quash the warrant and succeeded in the District Court. Thereupon the customs agent took out another warrant which was again quashed, and the property seized once more returned. The appeal is from the second order.

The supporting affidavits upon whose validity the present warrant depended were in substance as follows: That of Lynch, the customs agent, merely alleged that he had "cause to suspect" that some imported Swiss watches, which had been smuggled into the United States, were at premises on Broadway occupied by the defendants. In support of this conclusion he annexed three affidavits. The first was of one Robinson, an employee of the defendants, who swore they had sold "considerably" more imported watches and movements than they had bought, and that, upon calling this to the attention of one of them, Rabkin, he had been told to mind his business. That at the beginning of the year, 1929, he went with Rabkin to an office in Broome street where Robinson signed a lease in an assumed name, Davis, which was put on the door That later, several cases of imported watches were imported in Davis' name and delivered to this office on Broome street. Lynch swore in a separate affidavit that on September 4, 1929, he seized ten imported cases, manifested and entered as earthenware and consigned to Davis at Broome street, eight of which, valued at $250,000, contained Swiss watches and movements with the defendants' registered trade-marks upon them. That they had for some time been selling such goods below their "landed cost," and at times for less than the duty. That on September sixth Rabkin asked Lynch not to seize the watches on his premises, but to let him compromise the duty on them. Another agent, Sandlands, swore that in 1929 he had inquired as to importations of goods from Switzerland to one George Martin in Lafayette street, and found that the name was fictitious. That Rabkin opened for him two safes at Lafayette street, though it did not appear what they held. That goods entered in Martin's name as earthenware were Swiss watches of the same kind as those shipped to Davis. The warrant, issued on these affidavits, described the property to be seized as all the watches and movements on the premises at Broadway, marked "Swiss," or "Switzerland," and the agents seized all such goods found then in the defendants' possession. The plaintiff thereupon filed a libel of information to forfeit the whole lot.

The warrant was issued under section 499 of title 19, of the United States Code (19 USCA § 499), which had its origin in section 24 of chapter 5 of laws passed by the First Congress (1 St. L. p. 43). This provided that if a customs officer "have cause to suspect a concealment" of goods subject to duty "in any particular dwelling house, store, building or other place" he might, upon procuring a warrant, search for and seize them; it was enacted by the same Congress which at the time had before it the resolution that put the Fourth Amendment before the states. Were a practice shown antedating 1789, by which it was customary to seize smuggled goods upon a showing of no more than the unsupported suspicion of a customs officer, it may well be that this should be recognized as an exception to the amendment (Den ex dem. Murray v. Hoboken Land Co., 18 How. 272, 15 L. Ed. 372; Boyd v. U. S., 116 U. S. 616, 623, 6 S. Ct. 524, 29 L. Ed. 746; Ownbey v. Morgan, 256 U. S. 94, 41 S. Ct. 433, 65 L. Ed. 837, 17 A. L. R. 873; Corn Exchange Bank v. Coler, 280 U. S. 218, 50 S. Ct. 94, 74 L. Ed. 378); but, as we are not advised of any such [Wagner v. U. S., 8 F.(2d) 581, 585 (C. C. A. 8)], we cannot see how that question can here be pertinent, and may assume arguendo that more was necessary [Rice v. U. S., 24 F.(2d) 479 (C. C. A. 1); United States v. Lai Chew (D. C.) 298 F. 652]. In the case at bar there was much more; the supporting affidavits proved beyond any fair doubt that the defendants had been smuggling Swiss watches, and it was reasonably to be inferred that they would not be all kept at the offices on Broome and Lafayette streets, which were only covers for the defendants' real depot. Rabkin's declaration to Lynch showed that some, at any rate, of those smuggled were then at the office on Broadway. The only question appears to us to be whether it was permissible to seize all the watches found there, because some of those smuggled must have been among them, or whether to seize any at all, the plaintiff was bound to identify those to which it was entitled. The decisions involving liquor are not helpful, because the possession of all liquor outside a dwelling, not reported to the Commissioner, is prima facie unlawful (section 33, tit 2, National Prohibition Act [27 USCA § 50]), and any liquor may therefore be seized, once

a lawful entry is made. U. S. v. Old Dominion Warehouse, 10 F.(2d) 736 (C. C. A. 2).

The warrant was plain enough, if the power was so broad; it directed the officer to seize the lot, which it described as clearly as the facts allowed. On the main point we have been able to find no authorities, but it seems to us that the power should go so far. The Fourth Amendment requires no more than that searches shall be "reasonable" (Carroll v. U. S., 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790), a word clearly meant to give some latitude for the effective execution of the law. It is impossible to see how the undoubted power is to be exercised at all, if the smuggler can effectively block it by mingling the smuggled goods into a mass of fungibles, from which no one but him can separate them. We think it "reasonable" to take the whole, and leave it to him who confused them to disentangle the innocent from the guilty. In equity this doctrine is of such common application that it is necessary to do no more than allude to it; but the common-law also recognizes it, when the confusion is deliberate and to prevent detection. The Distilled Spirits, 11 Wall. 358, 369, 20 L. Ed. 167; The Idaho, 93 U. S. 575, 585, 586, 23 L. Ed. 978; Union Naval Stores Co. v. U. S., 240 U. S. 284, 290, 291, 36 S. Ct. 308, 60 L. Ed. 644; Smith v. Township of Au Gres (C. C. A. 6) 150 F. 257, 260, 261, 9 L. R. A. (N. S.) 876; Ryder v. Hathaway, 21 Pick. (Mass.) 298, 306; Willard v. Rice, 11 Metc. (Mass.) 493, 45 Am. Dec. 226. When the plaintiff's claim can be limited, he is indeed allowed only so much as may be necessary to satisfy him, but the proceedings at bar have not come to that point yet. The search and seizure were only to give the court jurisdiction over the libel of information, and possession was lawfully taken, unless the wronged party must in limine determine an issue which the law throws upon the tort-feasor. Upon the trial the defendants can prove what watches they lawfully imported; we do not now decide even that the same facts which justified the seizure will make out a prima facie case upon the libel. But we do hold that the circumstances made the seizure "reasonable," quite independently of whether the customs law gave broader powers of search than the Search Warrant Act.

Order reversed and motion denied.