## In re 14 EAST SEVENTEENTH STREET, BOROUGH OF MANHATTAN, CITY OF NEW YORK.

## In re 112 EAST NINETEENTH STREET, BOROUGH OF MANHATTAN, CITY OF NEW YORK.

## FRANKEL et al. v. UNITED STATES.

### No. 170.

Circuit Court of Appeals, Second Circuit.

June 5, 1933.

See, also, 65 F.(2d) 285.

Slade & Slade, of New York City (Maxwell Slade, David H. Slade, Charles S. Port, and Albion H. Koestler, all of New York City, of counsel), for appellants Joseph Frankel and others.

George Z. Medalie, U. S. Atty., of New York City (James Hendrick Terry, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

J. Frankel & Co., Inc., are importers of toys and novelties. On January 18, 1932, Customs Agent Lynch received information from detectives attached to the New York City police that Frankel & Co. were engaged in violating the customs laws. He accompanied the detectives to 112 East Nineteenth street on that date. The basement of the premises was found to be leased to the Mc-Cray Refrigerator Sales Corporation, and its agent, Simpson, informed Lynch that J. Frankel & Co., Inc., were permitted by it to use a portion of the basement for storage purposes. He saw a number of wooden packing cases bearing insignia "J. F." and "J. F. & Co.," and various markings, such as "made in Germany," and "made in Japan," and found that thirteen of these cases were recorded at the Warehouse Division of the Customs District No. 10, New York City, as still being held under bond for J. Frankel & Co. Inc., at the Imperial Warehouse, 490–508 Greenwich street, borough of Manhattan, and that the customs duties had not been paid. On January 21, 1932, Lynch went to this warehouse and found cases that had evidently been opened and repacked—some of them with rubbish and some of them with empty cartons—bearing the name of J. Frankel & Co., Inc. The government records showed that these cases were recorded as having been received directly from the steamship docks and held under bond for J. Frankel & Co., Inc., 14 East Seventeenth street, New York City. Thereafter, on the same day, Lynch proceeded to 14 East Seventeenth street, and found a number of cases, some full of merchandise and some empty, and found one of the cases there which was included among those recorded at the Government

Warehouse Division as not released from bond. The foregoing statements of the occurrences at 14 East Seventeenth street, on January 21, were confirmed by Customs Agent Wing. He swore that the appellant Joseph Frankel, the president of the Frankel Company, took him down to the basement and pointed out merchandise bearing importation markings that he said belonged to the corporation and admitted that the numbers had been scraped off the cases. Simons, who was said by Frankel to be the bookkeeper, stated to Wing that substantially no duties had been paid on the bonded merchandise of J. Frankel & Co., Inc., although such merchandise was continually being delivered from the bonded warehouse to them at 14 East Seventeenth street. On January 21, and after receiving the foregoing information, the appellants Joseph Frankel, Bernard Simons, Joseph Martin, the vice president of Frankel & Co., and Saul Wachtel, a salesman, as well as other employees of J. Frankel & Co., Inc., were arrested for violation of the customs laws upon complaints filed by Lynch, and four customs guards were put in charge of the merchandise at that place.

On January 23, 1932, search warrants were issued upon the affidavit of Lynch for search of premises 14 East Seventeenth street and 112 East Nineteenth street, they were executed on that day, and the contraband merchandise was seized. Simons, the bookkeeper, pointed out the merchandise at 14 East Seventeenth street, which had not paid duty, and only that was removed. The merchandise at 112 East Nineteenth street which was removed bore marks of foreign manufacture. The affidavits on which these search warrants were issued were to the effect that the employees of J. Frankel & Co. and of the Bonded Warehouse Company had stated to the affiant that for two and a half years it had been the practice of J. Frankel & Co. to remove merchandise from the Bonded Warehouse to 112 East Nineteenth street without payment of duty and then to take it, when unpacked, to 14 East Seventeenth street. The names of the parties making these statements were not given.

The appellants contend (1) that the search warrants were invalid because the affidavits upon which they were issued contained no primary facts, but were based upon hearsay; and (2) that, if the search warrants were invalid, the government cannot justify the seizures otherwise.

■ The property seized in this case consisted of toys of foreign manufacture which are said by the government to have been unlawfully diverted by J. Frankel & Co., Inc., from a Bonded Warehouse without paying customs duties. As none of the persons arrested claims any interest in the premises or in the property seized, only J. Frankel & Co., Inc., the corporation, can be heard to object to the search and seizure, Connolly v. Medalie (C. C. A.) 58 F.(2d) 629; United States v. De Vasto (C. C. A.) 52 F.(2d) 26, 78 A. L. R. 336; Newingham v. United States (C. C. A.) 4 F.(2d) 490; A. Guckenheimer & Bros. Co. v. United States (C. C. A.) 3 F.(2d) 786; Remus v. United States (C. C. A.) 291 F. 501, at page 511.

■ We think it unnecessary to discuss the contention of the appellants that the search warrants were invalid because issued upon affidavits setting forth matters which would not be competent proof in a trial before a jury, for there is sufficient basis otherwise for sustaining the seizures. United States v. Federal Mail Order Corporation (C. C. A.) 47 F.(2d) 164.

The entry of the East Nineteenth street premises on January 18, 1932, was entirely lawful. Simpson, the representative of the McCray Refrigerator Sales Corporation, the lessee of the premises, allowed the customs agent, Lynch, to enter the basement where some of the toys were stored. There he saw the thirteen cases of toys bearing the insignia "J. F." and "J. F. & Co." and various markings, indicating foreign importation, and also bearing numbers corresponding with records in the Customs House and the Imperial Warehouse which indicated that they still were under bond and that the customs duties had not been paid.

On January 21, 1932, Lynch found in the Bonded Warehouse empty cartons bearing the name of J. Frankel & Co., Inc., containing nothing but paper and rubbish. This same day the customs agent, Wing, came to the Seventeenth street premises where the corporation had its place of business. There he met the president, Joseph Frankel, who allowed him to look over the merchandise, took him to the basement, and pointed out packing cases which Frankel said belonged to the company bearing foreign importation markings. Wing noticed shavings on the floor, and Frankel admitted that the numbers on the cases had been scraped off. Wing was told by Frankel that one Simons was the bookkeeper, and was asked to await the return of the latter before inspecting the books. Simons, who was the secretary and treasurer of the company as well as the bookkeeper,

upon his arrival submitted a list of bonded and imported merchandise taken from the corporate records. Thereupon Wing stationed four customs guards at the premises with instructions to allow no merchandise to be removed, and had the officers and some of the employees of the company arrested for violation of the customs laws. On January 21, Lynch also went to the Seventeenth street premises, met Wing there, and saw a case under a bench which was part of a lot listed in the United States customs records as not released from bond and still subject to payment of customs duties.

On January 23, a warrant to search premises on East Seventeenth street issued upon Lynch's affidavit and was executed by the latter. Simons pointed out to him cartons of toys on the premises upon which duties had not been paid, as well as cartons of toys upon which duties had been paid, and the former were removed and appear upon the return under the search warrant. A warrant was also issued on January 23, upon Lynch's affidavit for premises on East Nineteenth street, and the latter supervised the removal of cases of toys bearing marks of foreign manufacture from that place.

From the foregoing it appears that there were at all times entirely peaceful entries both upon the East Seventeenth street and the East Nineteenth street premises, that the officers of the government found contraband goods at each place and identified those at Seventeenth street from the mass by the aid of Simons. Two days before the warrant issued or was executed, the property at East Seventeenth street was in the control of the customs guards. Probable cause that the customs laws were violated was shown, and the proof came little short of mathematical demonstration. It would be monstrous to hold that officers having access to a building could not seize known contraband without a search warrant. At East Seventeenth street nothing was taken but toys which an officer of the company pointed out as merchandise removed from bond without payment of duty. At East Nineteenth street all the merchandise of the corporation was removed, but part of it, at least, was contraband, and we held in United States v. Federal Mail Order Corporation (C. C. A.) 47 F.(2d) 164, that, when contraband goods were mingled with others, the owner who failed to identify goods that had not been smuggled, and to separate them from goods that had been smuggled could not avoid a seizure of the mass of commingled property.

The goods at East Seventeenth street remained in the custody of government agents from January 21, when the arrests were made, until they were finally removed, so their seizure long antedated the removal made under the search warrant. Control and effective seizure by the government took place without reference to the warrant. The installation of the customs guards upon the premises with direction to allow no property to be removed was at least a constructive seizure. The Hellig Olav (C. C. A.) 282 F. 534; Miller v. United States, 11 Wall. at page 296, 20 L. Ed. 135. The seizure of the goods at East Nineteenth street, though made at the time of the execution of the search warrant, was not dependent upon the validity of that warrant, as there was ample ground for seizure without resort to it.

It is true that it was held by this court in Re Phœnix Cereal Beverage Co. (C. C. A.) 58 F.(2d) 953, where an entry was made under an invalid search warrant and there was no justification for entering without a warrant, that a seizure made under such a warrant could not be justified otherwise. But it was also said that upon a lawful entry into a place of business, officers might seize goods unlawfully possessed. Lee Kwong Nom v. United States (C. C. A.) 20 F.(2d) 470. We do not regard the decision in Re Phœnix Cereal Beverage Co. as holding that the mere possession of an invalid warrant, where the use of none was needed, invalidates the seizure of known contraband. Indeed, upon a subsequent appeal in the same case, Judge Chase stated that the former decision held only that the warrant was invalid and that the proof did not justify a search independent of the warrant. So far as Murby v. United States, 293 F. 849 (C. C. A. 1), and Rice v. United States (C. C. A.) 27 F.(2d) 129, may be thought to hold that the unnecessary use of an invalid warrant renders a seizure of contraband known to be upon the premises unlawful, we must, with all deference, differ with them.

Assuming, for the purpose of argument only, that the search warrants were issued upon insufficient evidence, we have a case where entry was consented to and contraband was found. Consequently the warrants were not needed and the seizures were open to no objection which might apply to cases where the original entry depended upon the validity of the warrant.

The property at premises in East Seventeenth street was placed in the custody of the customs guards from the time that it was

found to be contraband and the arrest was made. The property at East Nineteenth street was upon premises belonging to third parties to which access was freely given by the person in lawful possession, so that entry under a search warrant was not required.

In Marron v. United States, 275 U. S. 192, 48 S. Ct. 74, 72 L. Ed. 231, Go-Bart Importing Co. v. United States, 282 U. S. 344, 51 S. Ct. 153, 75 L. Ed. 374, and United States v. Lefkowitz, 285 U. S. 452, 52 S. Ct. 420, 76 L. Ed. 877, 82 A. L. R. 775, the decisions depended upon whether there was an unlawful seizure of papers, books and records. The seizure of known contraband by officers who have obtained lawful entry is quite different and satisfies all constitutional requirements. United States v. Lefkowitz, 285 U. S. 452, 52 S. Ct. 420, 76 L. Ed. 877, 82 A. L. R. 775.

For the foregoing reasons the order denying the motions is affirmed.