**FEDERAL TENDER BOARD NO. 1 v. HAYNES OIL CORPORATION.**
No. 7856.

Circuit Court of Appeals, Fifth Circuit.
Dec. 5, 1935.

Richard H. Hill, Sp. Asst. to Atty. Gen., and S. D. Bennett, U. S. Atty., of Beaumont, Tex., for appellant.

J. N. Saye and W. T. Saye, both of Longview, Tex., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The appellant is a board created by presidential order under section 5 (b) of the Act of Feb. 22, 1935 (15 U.S.C.A. § 715d (b), to issue certificates of clearance for the movement of petroleum in interstate commerce. It refused a certificate for 15,794 barrels of petroleum produced and owned by appellee as being contraband oil under the act. The order was set aside by the District Court and a decree entered that a certificate should be granted, and the Board has

appealed, all by authority of section 5 (c) of the act (15 U.S.C.A. § 715d (c). The facts are not in dispute and are these: Haynes Oil Corporation in March, 1933, produced and stored 15,794 barrels of petroleum in accordance with the laws of Texas. In April following, solely to prevent drainage of its oil in the ground by contiguous wells belonging to others who were producing oil in excess of the amount allowed by the Texas Railroad Commission acting under the laws of that state, it produced and stored in the same tank 14,823 barrels of petroleum in excess of what was allowable. The two lots of petroleum have since stood in the tank, commingled and indistinguishable, each having been originally of the same quality and grade. The Railroad Commission of Texas has issued a permit authorizing the sale and transportation in Texas of 15,794 barrels of the oil in the tank. The status under the Texas law of the remainder is in litigation in the courts of Texas. Haynes Oil Corporation has sold the 15,794 barrels for delivery to a purchaser in Louisiana, and applied to the Federal Board for a certificate of clearance for 15,794 barrels out of the tank of 30,617 barrels. The Board held all the petroleum in the tank to be contraband oil and refused a certificate.

"Contraband oil" for which a certificate is to be refused is thus defined by section 2 of the act (15 U.S.C.A. § 715a): "The term 'contraband oil' means petroleum which, or any constituent part of which, was produced, transported, or withdrawn from storage in excess of the amounts permitted to be produced, transported, or withdrawn from storage under the laws of a State * * * or any of the products of such petroleum." A regulation has been issued reading in part: "Where application is made for approval of a tender covering petroleum commingled with petroleum which is not shown to have been produced, transported or withdrawn from storage within the amounts permitted by State law or regulations or orders prescribed thereunder, such tender shall not be approved." The position of the Board is that each barrel of petroleum in the tank of Haynes Oil Corporation is constituted or composed in part of and commingled with the unlawfully produced petroleum and is con-

taminated by it and is contraband. If the tender were of the entire tank of commingled oil, the position would be correct and a certificate would rightly be refused. But the tender here is of 15,-794 barrels to be withdrawn from the tank, leaving 14,823 barrels in it to stand for the unlawfully produced petroleum. The oil was all of one kind and grade. No fraud or wrong was intended by mixing it. No question of forfeiture or adverse title is involved. The proportion of lawfully and unlawfully produced oil is known. Both justice and practical convenience will best be served by allowing a separation as is proposed. In Harrington v. United States, 11 Wall. 356, 20 L.Ed. 167, forfeited distilled spirits were by the maker mixed with others, and it was thought just to award to the United States its proportion of the mixture. In Hentz v. The Idaho, 93 U.S. 575, 23 L.Ed. 978, there was a fraudulent confusion of bales of cotton, and the burden was put on the wrongdoer to identify or lose his own bales; but it was stated that this rule governing such cases of intermixture of property has many exceptions. "It applies in no case where the goods intermingled remain capable of identification nor where they are of the same quality or value, as where guineas are mingled or grain of the same quality." Commingling and proportionate separation is daily practiced in the business of grain elevators, pipe lines, and the like. We see no reason why the practice is not proper here. It may be that doubts as to quantity are to be resolved against a commingler, but we have no such question.

We are urged to hold that the Federal Board is bound by the action of the Texas Railroad Commission in issuing a permit for this 15,794 barrels to be withdrawn, since a main purpose of the federal act is to aid the state in respect of its conservation laws. The conclusion of the state authorities that the state law is satisfied is entitled to great weight; but since the United States are charged with the regulation of interstate commerce, and are not parties to any hearing before a state board, they should not be held absolutely bound by the action of such board.

The judgment is affirmed.