**NATIONAL ATLAS ELEVATOR CO. v. UNITED STATES.***

No. 11127.

Circuit Court of Appeals, Eighth Circuit.

July 20, 1938.

*Rehearing denied Aug. 11, 1938.

L. U. Stambaugh, of Fargo, N. D. (A. W. Cupler and N. G. Tenneson, both of Fargo, N. D., and A. C. Remele, of Minneapolis, Minn., on the brief), for appellant.

P. W. Lanier, U. S. Atty., of Fargo, N. D. (Donald M. Murtha, Asst. U. S. Atty., of Fargo, N. D., on the brief), for the United States.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

This was a law action brought by the government against the grain elevator company to recover the value of seventy three truck loads of wheat smuggled from Canada into the United States and there purchased by the defendant. The government had a verdict and judgment for the value of certain of the truck loads and the elevator company appeals.

The complaint contained seventy three causes of action and the material allegations in each were that on a specified date in 1933 or 1934, the defendant did purchase a certain quantity of wheat from a named person which was smuggled wheat, imported into the United States from the Dominion of Canada, upon which no duty had been paid, contrary to law, and in violation of section 593 of the Tariff Act of 1930,[1] and which said wheat being so introduced into the United States contrary to law became forfeited to the United States; that the defendant at the time of said purchase knew, or by the exercise of ordinary care could have known, that said wheat was smuggled wheat, and had been imported into the United States contrary to law and in violation of said section; that the domestic value of said wheat at the time of said purchase at the place of said purchase was a

---

[1] Section 593 of the Tariff Act of 1930, 19 U.S.C.A. § 1593, is as follows:

"Smuggling and clandestine importations—Fraud on revenue.

"(a) If any person knowingly and willfully, with intent to defraud the revenue of the United States, smuggles, or clandestinely introduces into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the custom house any false, forged, or fraudulent invoice, or other document or paper, every such person, his, her, or their aiders and abettors, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in any sum not exceeding $5,000, or imprisoned for any term of time not exceeding two years, or both, at the discretion of the court.

"Importation contrary to law.

"(b) If any person fraudulently or knowingly imports or brings into the United States, or assists in so doing, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law, such merchandise shall be forfeited and the offender shall be fined in any sum not exceeding $5,000 nor less than $50, or be imprisoned for any time not exceeding two years, or both.

"Presumptions.

"(c) Whenever, on trial for a violation of this section, the defendant is shown to have or to have had possession of such goods such possession shall be deemed evidence sufficient to authorize conviction, unless the defendant shall explain the possession to the satisfaction of the jury."

certain amount. That said wheat was stored by defendant elevator company. together with other wheat, and so commingled as to lose its identity and became thereby introduced into the commerce of the United States. That demand for the value of the wheat had been made upon defendant and payment refused.

The defendant answered admitting that on or about the dates alleged it had purchased the specified quantities of wheat from the named persons in the usual way and in the regular course of business, and it put the other allegations in issue by denial. It later stipulated that the wheat was of the value as charged.

Section 593 of the Tariff Act of 1930, counted upon in the complaint, makes it a criminal offense for any person to buy any merchandise brought into the United States contrary to law knowing the same to have been brought in contrary to law, and also declares that such merchandise shall be forfeited. There was sufficient evidence on the trial that certain of the truck loads of wheat purchased by the defendant had been smuggled as alleged in the complaint. It also appeared that none of it had ever been seized for violation of the Act and that no proceedings for its forfeiture had been had.

It was the position of the plaintiff, and it requested the court to charge the jury, that the elevator company was liable for the value of the smuggled wheat if by the exercise of ordinary care it could have known that the wheat was smuggled, "even though the defendant corporation had no actual knowledge that the wheat was smuggled." But the trial court refused to so hold. The court construed the complaint to charge that the defendant had the knowledge referred to in section 593; that is, "that defendant knew at the time it purchased each load of such seventy three loads that the wheat was smuggled wheat", and our inference from the record is that the defendant acquiesced in such construction of the complaint.

The defendant's agent testified that he purchased the wheat for the defendant in the usual course of the company's business, and that at the time of the purchases he had no knowledge whatsoever that it was grain that had been imported into the United States contrary to law, but the court, in view of some circumstantial evidence to the contrary, instructed the jury that the burden was on the government, and if it had proved by preponderance of evidence that the defendant bought the wheat knowing that it was smuggled, then the government would be entitled to a verdict for the value. The court sustained the government's request to instruct that the moment the smuggled grain was brought into the United States it was immediately, by operation of law, forfeited to the United States and became the property of the United States.

At the conclusion of all the evidence the defendant renewed its motion previously made to the court to direct a verdict for defendant on the ground, among others, that the evidence was not sufficient to establish that the government had a legal right to maintain the action against the defendant. Exception was saved to the adverse ruling on the motion, and the elevator company contends here that the statute under which the action was brought did not authorize any suit to be maintained against it by the government for recovery of the value of the smuggled grain.

In view of the court's construction of the complaint and the instructions to the jury, the verdict for the government was a finding by the jury on preponderance of the evidence that the wheat was smuggled wheat on which the duty had not been paid and was purchased by defendant knowing the same to have been brought into the United States contrary to section 593 of the Tariff Act referred to in the complaint.

■ The statute does clearly and specifically provide that such smuggled wheat should be forfeited, and while it was in the hands of defendant it could undoubtedly have been seized and upon proper proceedings it could have been forfeited for violation of the tariff act. Nor would the fact that the wheat was commingled by defendant with other wheat in anywise prevent such seizure and forfeiture. Union Naval Stores Co. v. U. S., 240 U.S. 284, 36 S.Ct. 308, 60 L.Ed. 644; Hentz v. The Idaho, 93 U.S. 575, 23 L.Ed. 978; Distilled Spirits, 11 Wall. 356, 368, 369, 20 L.Ed. 167; Federal Tender Board No. 1 v. Haynes Oil Corp., 5 Cir., 80 F.2d 468; In re 14 East Seventeenth Street, 2 Cir., 65 F.2d 289-291; U. S. v. Federal Mail Order Corp., 2 Cir., 47 F.2d 164.

■ But the section of the statute under which this suit has been brought contains no provision for the forfeiture or recovery of the value of smuggled merchandise. The section reads, "such merchandise shall be forfeited." It appears that since as far back as 1799 the congress has been enact-

ing revenue laws which carry forfeiture penalties for their violation. Some of them, like section 593 here involved, have prescribed forfeiture of merchandise and some have provided that "merchandise or the value thereof" should be forfeited. Neither the diligence of counsel nor our search has discovered any instance where under a statute worded like section 593, and in the absence of a seizure, the government has been allowed to recover the value of the merchandise made subject to forfeiture, from a purchaser. On the contrary, it appears to have been definitely settled by the decision of the Supreme Court in United States v. Auffmordt, 122 U.S. 197, 7 S.Ct. 1182, 30 L.Ed. 1182; Id., D.C., 19 F. 893, that the government may not maintain an action to recover the value of goods subject to forfeiture for revenue law violation where the applicable statute reads "such merchandise shall be forfeited."

In that case, Auffmordt and another were sued by the government in personam for $321,519.29, being the value of merchandise imported from Switzerland into the port of New York and entered in the custom house by the defendants by means of fraudulent under-valuations in the invoices as to the market value of the goods. None of the goods were seized, nor were any proceedings ever taken to forfeit the goods. When the case came on for trial before the District Judge and a jury, and after the opening by the plaintiff's counsel stating in substance the above matters, the defendant's counsel moved upon the record and the facts stated in the opening that a verdict be directed for the defendants on the ground that forfeitures of value under section 2864, Rev.St., had been superseded by section 12 of the Act of June 22, 1874, 18 Stat. 188, and that since that act the goods only, and not their value, could be forfeited. Section 2864 provided as penalty for knowingly making entry of merchandise by fraudulent under-valuation that "such merchandise (or the value thereof) shall be forfeited." Section 12 of the Act of June 22, 1874, provided for the same violation that "such merchandise shall be forfeited". After elaborate argument the district court granted the motion. It assumed that the section 2864 which included the words "or the value thereof" would authorize the government to maintain a suit for value independent of any seizure of the goods. But it held that no suit to recover such value without seizure could be main-

tained under the later statute which specified "such merchandise shall be forfeited".

The trial court pointed out that the distinction between acts which declare a forfeiture of goods and those which provide for a forfeiture of goods or the value thereof, is of very great practical importance. It said (19 F. page 901):

"Where the law makes the forfeiture absolute, as the moiety act makes it, the title of the goods is vested in the government at once, from the moment when the unlawful acts are committed; so that a sale of the goods by the importer, before seizure, to bona fide purchasers even, 'will not oust the title of the government. Caldwell v. U. S., 8 How. 366 [12 L.Ed. 1115]; Henderson's Distilled Spirits, 14 Wall. 44 [20 L.Ed. 815]; U. S v. Seventy-Six Thousand One Hundred and Twenty-Five Cigars [D.C.], 18 F. 147. But where the forfeiture is only in the alternative of 'the goods or their value,' a sale to a bona fide purchaser, before the government has exercised its right of election to resort to the goods, will pass a good title, and prevail against any subsequent seizure by the government. Caldwell v. U. S., supra; U. S. v. York St. Flax Spinning Co. [Fed.Cas. No. 16781], 17 Blatchf. 138; U. S. v. Four Cases of Lastings [Fed.Cas. No. 15145], 10 Ben. 371. Where, as in section 2864, the forfeiture is in the alternative, the government's right of election to pursue the goods or their value, so long as the goods have not passed into bona fide hands, remains absolute. Though the goods be at hand and capable of immediate seizure, the government is not bound to resort to them; but, at its option, may pass them by and sue the importers for their value. This is expressly stated by the chief justice in the case of U. S. v. York St. Flax Spinning Co., supra, where he says, (page 140):

" 'Until the sale the government may seize the goods and realize their value by a sale; or it may pass by the goods and look directly to the wrong-doer for their value. The effect of a sale is to take away all right of proceeding against the goods, and leave the government to its original right of action against the fraudulent importer, for the value only.'

"But, under section 12 of the moiety act [reading, 'such merchandise shall be forfeited'] no such election can possibly exist to pass by the goods and sue for their value. The act itself determines that election by decreeing the absolute forfeiture of

944

the goods. The two sections are therefore clearly repugnant in this respect; and the earlier statute is, therefore, necessarily repealed pro tanto, and falls within the express language of the repealing clause. Section 26. No suit for value, therefore, can be maintained so long as section 12 of the moiety act is in force."

The judgment óf the District Court dismissing the government's suit for the value of the goods was affirmed by the Circuit Court without opinion and the case went on error to the Supreme Court. The Supreme Court put in parallel columns the early section reading "such merchandise (or the value thereof) shall be forfeited", and the later section in the Act of 1874 reading "such merchandise shall be forfeited", and it observed that the later section "adds, as a punishment for the offense, fine or imprisonment, or both, and a forfeiture of the merchandise, in addition to the fine. It leaves out a forfeiture of the value of the merchandise" (7 S.Ct. page 1186). The court said, "The absolute forfeiture of the merchandise * * * is inconsistent * * with the alternative forfeiture of the merchandise or its value." It approved the opinion of the District Judge and affirmed the action of that court in dismissing the case on the opening statement of counsel.

The Auffmordt Case was decided by the Supreme Court in 1887. The holding was squarely to the point that the government could not maintain a suit for the value of merchandise subject to forfeiture under a statute reading as this statute reads, "such merchandise shall be forfeited", absent any seizure or proceedings in forfeiture of the goods. The decision does not appear to have been qualified or departed from and the absence of any such suits by the government during the following half century, despite the many instances of smuggling which we may assume, the law has been deemed settled against the right of the government to maintain a suit under such a statute for the value of goods which are made subject to forfeiture but which have never been seized.

█ Turning to the government's contention that the smuggled wheat became the government's property the moment it crossed the border. A general incident of the ownership of property is the right of the owner to recover its value from any one who takes and converts it. Counsel for the government was consistent in urging that an owner of wheat may recover its value from one who has converted it without the owner's consent, whether the converter knew whose wheat it was or not. Even careful inquiry by the converter would not ordinarily protect him in a suit by a real owner. Logically, if the government became the absolute owner of the smuggled wheat then everyone who could be identified as having had it and used or sold it would be liable to pay the government its value.

█ But no cases are found to support the claim of such absolute ownership in the government by virtue of such a forfeiture statute as section 593 in the absence of seizure of the property and judgment of forfeiture thereof. The recent case of Motlow v. State ex rel., 295 U.S. 97, 55 S.Ct. 661, 79 L.Ed. 1327, declares the law to the contrary. The case arose under revenue statutes which declared forfeiture of property used for carrying on the business of a distiller in fraud of the revenue. The forfeiture clauses read, "he * * * shall forfeit the distillery" and "all the right, title, and interest * * * shall be forfeited to the United States." Secs. 3257, 3281, Rev.St., 26 U.S.C.A. §§ 261, 306, now 26 U.S.C.A. §§ 1155(f), 1184. It was established that the revenue law had been violated and the distillery in question was forfeit to the government. It was contended that the distillery had become the property of the United States as of the date of the offense on which the forfeiture was based. But the Supreme Court held that under the statutes in question, the title to property that had become forfeit does not vest in the United States until a judgment of forfeiture thereof has been obtained by the government. After the property has been seized and the adjudication of forfeiture has been obtained, then the judgment may relate back to the date of the offense as proved. The court said (page 662): "While, under the statute in question, a judgment of forfeiture relates back to the date of the offense as proved, that result follows only from an effective judgment of condemnation. Henderson's Distilled Spirits, supra, [page 57.] In this instance, there was no such judgment, and hence title did not vest in the United States." In Caldwell v. U. S., 8 How. 366-380, 381, 12 L.Ed. 1115, the court said: "Title * * * is not consummated until after judicial condemnation." In U. S. v. One Hundred Barrels Distilled Spirits, 14 Wall. 44, 57, 81 U. S. 44, 20 L.Ed. 815:

"* * * the effect of such wrongful acts, where the forfeiture is made absolute by statute, is to divest the owner of all property in the goods seized and to vest the title to the same in the United States, in case a prosecution ensues, and a decree of condemnation follows." In U. S. v. Stowell, 133 U.S. 1, 10 S.Ct. 244, 247, 33 L.Ed. 555: "* * * the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the United States, although their title is not perfected until judicial condemnation."

The decisions are conclusive against the government's contention that the government became the owner of the smuggled wheat involved here the moment the same crossed the border. Section 593 relied upon empowered the government to seize the smuggled wheat from defendant, however commingled, or if there was proof of scienter beyond reasonable doubt, to prosecute for the criminal offense. But action against the defendant as a purchaser to recover the value of wheat that had never been seized was not authorized.

Reversed and dismissed.